# EXHIBIT 1

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

_____ Washington _____ **County**

| For Prothonotary Use Only: | **FILED** |
|---|---|
| Docket No: **2021- 4803** | JUL 2 6 2021 |
| | LAURA H. HOUGH PROTHONOTARY |

*The information collected on this form is used solely for court administration purposes. The form* *supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**S E C T I O N   A**

| **Commencement of Action:** | |
|---|---|
| ☒ Complaint    ☐ Writ of Summons | ☐ Petition |
| ☐ Transfer from Another Jurisdiction | ☐ Declaration of Taking |

| Lead Plaintiff's Name: | Lead Defendant's Name: |
|---|---|
| The Revocable Living Trust Agreement of William E. Gear | Range Resources - Appalachia, LLC |

| **Are money damages requested?** ☒ Yes   ☐ No | Dollar Amount Requested: (check one) | ☐ within arbitration limits ☒ outside arbitration limits |
|---|---|---|

| **Is this a *Class Action Suit*?** ☐ Yes ☒ No | **Is this an *MDJ Appeal*?** ☐ Yes ☒ No |
|---|---|

Name of Plaintiff/Appellant's Attorney: _Robert J. Burnett_

☐ **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**S E C T I O N   B**

**Nature of the Case:**  Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE.***  If you are making more than one type of claim, check the one that you consider most important.

**TORT** *(do not include Mass Tort)*
- ☐ Intentional
- ☐ Malicious Prosecution
- ☐ Motor Vehicle
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability *(does not include mass tort)*
- ☐ Slander/Libel/ Defamation
- ☐ Other:
  _____

**MASS TORT**
- ☐ Asbestos
- ☐ Tobacco
- ☐ Toxic Tort - DES
- ☐ Toxic Tort - Implant
- ☐ Toxic Waste
- ☐ Other:
  _____

**PROFESSIONAL LIABLITY**
- ☐ Dental
- ☐ Legal
- ☐ Medical
- ☐ Other Professional:
  _____

**CONTRACT** *(do not include Judgments)*
- ☐ Buyer Plaintiff
- ☐ Debt Collection: Credit Card
- ☐ Debt Collection: Other
  _____
- ☐ Employment Dispute: Discrimination
- ☐ Employment Dispute: Other
  _____
- ☒ Other:
  Breach of Contract
  _____

**REAL PROPERTY**
- ☐ Ejectment
- ☐ Eminent Domain/Condemnation
- ☐ Ground Rent
- ☐ Landlord/Tenant Dispute
- ☐ Mortgage Foreclosure: Residential
- ☐ Mortgage Foreclosure: Commercial
- ☐ Partition
- ☐ Quiet Title
- ☐ Other:
  _____

**CIVIL APPEALS**
Administrative Agencies
- ☐ Board of Assessment
- ☐ Board of Elections
- ☐ Dept. of Transportation
- ☐ Statutory Appeal: Other
  _____
- ☐ Zoning Board
- ☐ Other:
  _____

**MISCELLANEOUS**
- ☐ Common Law/Statutory Arbitration
- ☐ Declaratory Judgment
- ☐ Mandamus
- ☐ Non-Domestic Relations Restraining Order
- ☐ Quo Warranto
- ☐ Replevin
- ☐ Other:
  _____

*Updated 1/1/2011*

## NOTICE

**Pennsylvania Rule of Civil Procedure 205.5. (Cover Sheet) provides, in part:**

**Rule 205.5.    Cover Sheet**

(a)(1)   This rule shall apply to all actions governed by the rules of civil procedure except the following:

(i)        actions pursuant to the Protection from Abuse Act, Rules 1901 et seq.

(ii)       actions for support, Rules 1910.1 et seq.

(iii)      actions for custody, partial custody and visitation of minor children, Rules 1915.1 et seq.

(iv)      actions for divorce or annulment of marriage, Rules 1920.1 et seq.

(v)       actions in domestic relations generally, including paternity actions, Rules 1930.1 et seq.

(vi)      voluntary mediation in custody actions, Rules 1940.1 et seq.

(2)      At the commencement of any action, the party initiating the action shall complete the cover sheet set forth in subdivision (e) and file it with the prothonotary.

(b)      The prothonotary shall not accept a filing commencing an action without a completed cover sheet.

(c)      The prothonotary shall assist a party appearing pro se in the completion of the form.

(d)      A judicial district which has implemented an electronic filing system pursuant to Rule 205.4 and has promulgated those procedures pursuant to Rule 239.9 shall be exempt from the provisions of this rule.

(e)      The Court Administrator of Pennsylvania, in conjunction with the Civil Procedural Rules Committee, shall design and publish the cover sheet.  The latest version of the form shall be published on the website of the Administrative Office of Pennsylvania Courts at www.pacourts.us.

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

THE REVOCABLE LIVING TRUST
AGREEMENT OF WILLIAM E. GEORGE –
2015 (WILLIAM GEORGE, CO-TRUSTEE),
LESLIE MILNER, RUTH G. EXLEY a/k/a
RUTH L. EXLEY and BARBARA
SULLIVAN,

        Plaintiffs,

v.

RANGE RESOURCES-APPALACHIA, LLC

        Defendant.

CIVIL DIVISION

NO. *2021-4803*

**COMPLAINT IN CIVIL ACTION**

Filed on Behalf of Plaintiffs

Counsel Of Record For This Party:

Robert J. Burnett, Esquire
PA I.D. No. 76734

Brendan A. O'Donnell, Esquire
PA I.D. No. 309007

HOUSTON HARBAUGH, P.C.
Firm ID No. 371
401 Liberty Avenue
Three Gateway Center, 22nd Floor
Pittsburgh, PA  15222
(412) 281-5060
(412) 281-4499 (Fax)
rburnett@hh-law.com
odonnellba@hh-law.com

**FILED**

JUL 2 6 2021

LAURA H. HOUGH
PROTHONOTARY

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

| | |
|---|---|
| THE REVOCABLE LIVING TRUST AGREEMENT OF WILLIAM E. GEORGE – 2015 (WILLIAM GEORGE, CO-TRUSTEE), LESLIE MILNER, RUTH G. EXLEY a/k/a RUTH L. EXLEY and BARBARA SULLIVAN, | CIVIL DIVISION<br><br>NO. |

                    Plaintiffs,

        v.

RANGE RESOURCES-APPALACHIA, LLC

                    Defendant.

## <u>NOTICE TO DEFEND</u>

YOU HAVE BEEN SUED IN COURT. IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU. YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY CLAIM OR RELIEF REQUESTED BY THE PLAINTIFF. YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

**Lawyer Referral Service**
**119 South College Street**
**Washington, PA 15301**
**(724) 225-6710**

**Southwestern Pennsylvania Legal Aid Society**
**10 West Cherry Avenue**
**Washington, PA 15301**
**(724) 225-6170**

{CLIENT WORK/37335/0001 H1811001:6}

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA

THE REVOCABLE LIVING TRUST
AGREEMENT OF WILLIAM E. GEORGE –
2015 (WILLIAM GEORGE, CO-TRUSTEE),
LESLIE MILNER, RUTH G. EXLEY a/k/a
RUTH L. EXLEY and BARBARA
SULLIVAN,

        Plaintiffs,

   v.

RANGE RESOURCES-APPALACHIA, LLC

        Defendant.

CIVIL DIVISION

NO.

## **COMPLAINT**

     AND NOW, come the Plaintiffs, by and through their undersigned counsel, Robert J. Burnett, Esquire, Brendan A. O'Donnell, Esquire and Houston Harbaugh, P.C., and file the within Complaint in Civil Action against the above-named Defendant and, in support thereof, aver as follows:

### **Parties**

     1.    Plaintiffs William E. George is an adult individual who is a Trustee of the Revocable Living Trust Agreement of William E. George – 2015, with an address of 82 Austin Avenue, Greenville, Rhode Island 02828.

     2.    Plaintiff Leslie Milner is an adult individual with an address of 75 Shirley Boulevard, Cranston, Rhode Island 02910.

3.     Plaintiff Ruth G. Exley a/k/a Ruth L. Exley is an adult individual with an address of 2816 NE 51st Avenue, Portland, Oregon 97213.

4.     Plaintiff Barbara Sullivan is an adult individual with an address of 334 Elmwood Avenue, Wollaston, Massachusetts, 02170.

5.     Defendant Range Resources-Appalachia, LLC is a limited liability company with an address for service of process care of Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110.

## **Factual Background**

### *The Lease*

6.     William E. George, Leslie Milner, Cynthia Gilliam and Barbara Sullivan executed an "Oil and Gas Lease Paid-Up Non-Surface Occupancy Lease" with Range Resources-Appalachia, LLC ("Range Resources") on or about January 31, 2014 (the "Lease"), pertaining to approximately 98.4196 acres in Smith Township, Washington County, Pennsylvania (the "Subject Property"). A copy of the Lease is attached hereto as **Exhibit A**.[1]

7.     Paragraph 5(B) of the Base Form of the Lease states:

> For gas and other hydrocarbons produced with gas, to pay LESSOR, as royalty for the gas, saved and sold from the Leased Premises, underline eighteen percent (18%) of the net amount realized by LESSEE for the sale and delivery of such gas. Payment of royalty for gas marketed during any calendar month to be on or about the 60th day after receipt of such funds by LESSEE, subject to LESSEE's verification of LESSOR's mineral ownership.

*See,* Exhibit A.

---

[1] The Plaintiffs do not admit or concede that the actual acreage subject to the Lease is 98.4196 acres, as the actual amount may be more than 98.4196 acres. The Plaintiffs specifically reserve the right to challenge, dispute and/or contest any royalty calculation based on the incorrect acreage and the filing of this Complaint shall not constitute a waiver, acquiescence or ratification of the same.

8.      Paragraph 5(C) of the Base Form of the Lease addresses the deductibility of a *pro rata* share of post-production costs, which it defines as follows:

> There shall be no deductions from the royalty payments in (A) and (B) above for any costs of production, including exploring or surveying the Leased Premises for Oil and Gas, or installing, drilling, completing, equipping and producing a well. However, such royalty payments shall be less Lessor's pro-rata share of post-production costs. Post-production costs include, without limitation, (i) all costs actually incurred by LESSEE and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale by LESSEE; (ii) all cost of gathering, marketing, compression, dehydration, transportation, processing and removal of liquid hydrocarbons, and other liquids or gaseous substances or impurities from the production; and (iii) any other treatment or processing required by the purchaser or to otherwise market and sell gas, oil or any other hydrocarbons or substances produced with oil or gas. LESSEE also may deduct from royalty payments LESSOR's prorata share of any tax imposed by any government body that is levied upon the value of production or the severance of Oil and Gas from the Leased Premises.

*See,* Exhibit A.

9.      The Base Form of the Lease has a unitization provision in its Paragraph 9 that permits the pooling and unitization of the Subject Property. With respect to payments, Paragraph 9 of the Lease's Base Form states, in part:

> Any well drilled in said pooled unit whether or not located on the Leased Premises, shall nevertheless be deemed to be located upon the Leased Premises within the meaning and for the provisions and covenants of this Lease to the same effect as if all the lands comprising said unit were described in and subject to this Lease and LESSOR agrees to accept, in lieu of the royalty provided in Paragraph 5 of this Lease, that proportion of such royalty which the acreage covered by this Lease and included in such unit bears to the total number of acres comprising said pooled unit.

*See,* Exhibit A.

10.     The Base Form of the Lease is modified by an Addendum, whose terms prevail and supersede inconsistent provisions in the Base Form of the Lease. *See,* Exhibit A.

11.     Addendum No. 7 is entitled "Post-Production Costs" and states:

Royalty payments shall be less LESSOR's pro-rata share of post-production costs.
Post-production costs include, without limitation, (i) all costs actually incurred by
LESSEE and all losses of produced volumes whether by use as fuel, line loss,
flaring, venting or otherwise from and after the wellhead to the point of sale by
LESSEE; (ii) all costs of gathering, marketing, compression, dehydration,
transportation, processing and removal of any liquid hydrocarbons, and other
liquids or gaseous substances or impurities from the production; and (iii) any
other treatment or processing required by the purchaser or to otherwise market
and sell gas, oil or any other hydrocarbons or substances produced with oil or gas.
In no event shall the post production costs exceed $0.80 per MMBTU.

*See,* Exhibit A.

12.  .    It is averred that Addendum No. 7 supersedes and replaces Paragraph 5(C ) of the

Base Lease and therefore controls the deduction of post-production costs from the Plaintiffs'

production royalty.

### *Conveyances of Interests in the Subject Property*

13.     By way of an Oil, Gas and Mineral Deed dated April 1, 2015 and recorded at the

Office of the Recorder of Deeds of Washington County, Pennsylvania at Instrument Number

201509327, William E. George conveyed all of his interest in the Subject Property to The

Revocable Living Trust Agreement of William E. George – 2015. A copy of this instrument is

attached hereto as **Exhibit B**.

14.     By way of an Oil, Gas and Mineral Deed dated January 8, 2016 and recorded at

the Office of the Recorder of Deeds of Washington County, Pennsylvania at Instrument Number

201601560, Cynthia M. Gilliam conveyed all of her interest in the Subject Property to Ruth G.

Exley. A copy of this instrument is attached hereto as **Exhibit C**.

*Unitization of the Subject Property and Royalty Payments*

15.     Upon information and belief, Range Resources has placed the Subject Property into two production units where hydrocarbon production is ongoing, the: *Jacob Campbell Unit B* and the *Mocek John A Unit* (the "Units").

16.     Range Resources pays production royalties to William E. George in his capacity as Co-Trustee of The Revocable Living Trust Agreement of William E. George – 2015, Leslie Milner, Ruth G. Exley and Barbara Sullivan (collectively, the "Plaintiffs") from wells in the Units. An exemplar royalty statement is attached hereto as **Exhibit D**.

17.     Based on the contents of the royalty statements that Range Resources transmits to the Plaintiffs, it is reasonably believed and therefore averred that Range Resources incurs post-production costs associated with the hydrocarbons produced from the Units, including costs for gathering, transportation and processing. *See,* Exhibit D.

18.     For each well identified in the royalty statements that Range Resources transmits to the Plaintiffs, Range Resources identifies a deduction of an alleged *pro rata* share of said costs from the Plaintiffs' royalties associated with hydrocarbons produced and sold from that well. *See,* Exhibit D.

19.     Pursuant to the express language set forth in Addendum No. 7, the Plaintiffs' *pro rata* share of any and all post-production costs authorized under the Lease shall be "capped" at $0.80 per MMBTU.

20.     It is averred that Range Resources has neglected and failed to apply the aforesaid cap to all of the post-production costs deducted from the Plaintiffs' royalty. As such, the actual value of the *pro rata* share of the post-production costs that Range Resources deducts from the royalties exceeds the agreed upon cap of $0.80 per MMBTU.

## COUNT I – BREACH OF CONTRACT

21.     All of the foregoing paragraphs are incorporated by reference as though set forth at length herein.

22.     The Lease is a contract between the Plaintiffs and Range Resources.

23.     The Lease addresses the calculation and payment of production royalties.

24.     Range Resources breaches its royalty payment obligations under the Lease.

25.     Under Addendum No. 7, the Plaintiffs' *pro rata* share of post-production costs cannot exceed $0.80 per MMBTU.

26.     It is averred that Range Resources has not complied with this limitation on post-production costs and wrongfully deducts a *pro rata* share of costs from the Plaintiffs' royalties that are in excess of $0.80 per MMBTU.

27.     In particular, it is averred that Range Resources fails and neglects to subject "processing" costs to the $0.80 per MMBTU post-production cost "cap".

28.     "Processing" costs and costs for "removal of any liquid hydrocarbons" are specifically enumerated in the Addendum No. 7 as being subject to the "cap".

29.     Range Resources knowing and deliberate failure to apply the $0.80 per MMBTU post-production cost cap to processing costs is a material breach of the Lease.

30.     Range Resources knowing and deliberate failure to apply the $0.80 per MMBTU post-production cost cap as set forth in Addendum No. 7 has damaged the Plaintiffs by resulting in an underpayment of royalties to the Plaintiffs, the amount of which shall be determined at trial.

31.     Each royalty payment tendered by Range Resources under the Lease is a separate, independent and discrete payment with its own calculations. Each failure by Range Resources to

apply and follow the post-production cap set forth in Addendum No. 7 is a separate and independent material breach of the Lease.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Range Resources-Appalachia, LLC in an amount in excess of arbitration limits, together with any available interest under the law or the contract and any other relief that this Honorable Court deems to be just and proper.

## COUNT II – BREACH OF CONTRACT

32.    Paragraphs 1-14 are incorporated by reference as though set forth at length herein.

33.    The Lease is a contract between the Plaintiffs and Range Resources.

34.    The Lease addresses the calculation and payment of production royalties.

35.    Range Resources breaches its royalty payment obligations under the Lease.

36.    The Lease specifies that royalties are based on hydrocarbons produced from the Subject Property or from the Units.

37.    Notwithstanding the limitation on the *pro rata* share of post-production costs that may be deducted from the Plaintiffs' royalty, the Lease is clear that post-production costs must be associated with the hydrocarbons produced from the Subject Property or from the Units.

38.    Upon information and belief, Range Resources produces hydrocarbons from the Units and commingles those hydrocarbons with those from other wells prior to point(s) of sale such that Range Resources does not specifically sell the hydrocarbon molecules produced from the Units.

39.    Upon information and reasonable belief, Range Resources calculates the value of hydrocarbon production from the Units by way of weighted average sales prices involving

commingled hydrocarbon production from many wells and allocations of these prices to wells in the Units.

40.     Upon information and belief, Range Resources assesses, charges and/or deducts post-production costs against the Plaintiffs' royalties that are not associated with the specific hydrocarbon molecules produced from the Units.

41.     It is averred that Range Resources does not calculate and pay a royalty based on the hydrocarbons produced, marketed and sold from the Units. Without admitting or conceding that Range Resources has complied with the post-production limitations set forth in the Lease (which it has not), the Plaintiffs aver that some of the costs assessed against their royalty are remote costs which are unrelated to the movement and/or processing of the actual hydrocarbon molecules produced from the Units.

42.     As a result Range Resources knowing and deliberate decision to calculate the royalty (inclusive of charging, assessing and deducting post-production costs as may be eligible for deduction under the Lease) based on remote, unrelated and improper post-production costs, the Plaintiffs have been damaged through reduced and diminished royalty payments. These damages are in excess of arbitration limits and will be determined at trial.

43.     Each royalty payment tendered by Range Resources under the Lease is a separate, independent and discrete payment with its own calculations. Each failure by Range Resources to adhere to the Lease's royalty provision is a separate and independent material breach of the Lease.

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and against Range Resources-Appalachia, LLC in an amount in excess of

arbitration limits, together with any available interest under the law or the contract and any other relief that this Honorable Court deems to be just and proper.

### **Jury Demand**

44.    A jury trial is hereby demanded for each claim in this proceeding which is triable by jury.

Respectfully submitted,

Date: July 23, 2021                    By: _____

Robert J. Burnett, Esq.
Pa. ID. No. 76704
Brendan A. O'Donnell, Esq.
Pa. ID. No. 309007
HOUSTON HARBAUGH, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA 15222
(412) 281-5060
(412) 281-4499 (fax)
rburnett@hh-law.com
odonnellba@hh-law.com
*(Counsel for Plaintiffs)*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, Ruth G. Exley, hereby verify that the statements made in the foregoing **Complaint in Civil Action** are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: 7/19/21

_____
Ruth G. Exley

## VERIFICATION

I, Barbara Sullivan, hereby verify that the statements made in the foregoing **Complaint in Civil Action** are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: 7-17-2021

_Barbara Sullivan_
Barbara Sullivan

## VERIFICATION

I, Leslie Milner, hereby verify that the statements made in the foregoing **Complaint in Civil Action** are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: _July 17, 2021_

_____
Leslie Milner

## VERIFICATION

I, William E. George, as Co-Trustee of the Revocable Living Trust Agreement of William E. George - 2015, hereby verify that the statements made in the foregoing **Complaint in Civil Action** are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Dated: July 16 2021

William E. George, Co-Trustee

# EXHIBIT A

# OIL AND GAS LEASE
## PAID-UP NON-SURFACE OCCUPANCY LEASE

**THIS OIL AND GAS LEASE** ( the "Lease") made and entered into this _____ day of January, 2014 by and between William E. George, of 82 Austin Avenue, Greenville, RI 02828, Leslie Milner, of 75 Shirley Blvd., Cranston, RI 02910, Cynthia Gilliam, of 8070 S.W. Valley View Court, Portland, OR 97225, and Barbara Sullivan, of 334 Elmwood Ave., Wollaston, MA 02170 (whether one or more, the "LESSOR"), and **RANGE RESOURCES – APPALACHIA, LLC,** P.O. Box 30 , Canonsburg, PA, 15317,  ("LESSEE").

1.  **GRANTING CLAUSE:**  LESSOR, for and in consideration of One Dollar ($1.00) and other valuable consideration  paid by  LESSEE, the receipt of which is acknowledged, and the covenants and agreements  contained in this Lease grants, leases and lets exclusively to LESSEE, its successors and assigns, all the oil and gas, including but not limited to coal seam gas, coalbed methane gas, coalbed gas, methane gas, gob gas, and all associated natural gas and other hydrocarbons and non-hydrocarbons contained in, associated with, emitting from or produced/originating within any formation, gob area, mined out area, coal seams and all communicating zones, and their liquid or gaseous constituents, whether hydrocarbon or non-hydrocarbon, underlying the land herein leased (whether one or more, "Oil and Gas").  The Lease is granted for any or all of the following purposes: Exploring for by geophysical, geological, seismic, and other methods, including core drilling, drilling, operating for, producing, removing, transporting and marketing Oil and Gas; the right to stimulate all coal seams or other strata or formations using any and all methods and technology available at the time of stimulation; the right to conduct surveys (including geophysical and seismic surveys); to transport by pipelines or otherwise across and through the Leased Premises Oil and Gas from the lands covered by the Lease, or from lands unitized or pooled therewith, for so long as the transportation of such production may be desired by LESSEE; the placing of tanks, equipment, electric power lines, telephone lines, water lines, impoundments and ponds, compression and collection facilities, roads and structures for the production of Oil and Gas, together with the right to enter into and upon the lands covered by the Lease, or upon lands unitized or pooled therewith, at all times for the aforesaid purposes, and the right to conduct secondary or tertiary recovery operations by injecting gas, water and other fluids or air into subsurface strata.  No roads from adjacent non-unitized or pooled properties shall be constructed on the lands covered by the Lease without LESSOR's written consent.  Any equipment or pipelines from other wells not located on such lands or on lands unitized or pooled therewith shall be approved by LESSOR in writing.

2.  **DESCRIPTION OF THE LEASED LANDS:**  The lands covered by the Lease are situated in Smith  Township, Washington  County, Commonwealth  of  Pennsylvania, Tax  Parcel  Number(s) 570-026-00-00-0015-00, 570-026-00-00-0015-01, 570-026-00-00-0015-04, 570-026-00-00-0012-00, 570-026-00-00-0013-00, 570-026-00-00-0013-01, 570-026-00-00-0014-00, being the property lying South of Raccoon Creek and referenced and described in Deed Book 280 Page 501, being all the property owned by LESSOR or to which LESSOR may have any rights in said Township, containing 98.4196 acres, more or less, and including all adjacent or contiguous lands owned or claimed by LESSOR, although not included within the boundaries of the land particularly described above, and being the property described in Deed Book 290, Page 501, and/or at Instrument No. N/A of the Washington County Recorder of Deeds Office ("Leased Premises").

3.  **TERM OF LEASE:**  This Lease shall continue in force and the rights granted to LESSEE shall  be quietly enjoyed by LESSEE for a term of five years from September 1, 2013 (the "Primary Term"), and as long thereafter as operations are conducted on the Leased Premises with no cessation for more than one hundred twenty (120) consecutive days, or as long as well(s) producing Oil and Gas in paying quantities or well(s) capable of producing Oil and Gas in paying quantities from  the Leased Premises or from lands unitized or pooled therewith, in the sole judgment of LESSEE, or as the Leased Premises shall be operated by LESSEE or as otherwise maintained in full force and effect pursuant to the other provisions in this Lease.  For purposes of this Lease, the word "operations" shall be defined as any one or more of the following: Making applications for any necessary permits required for operations, grading or preparation of a drill site; the placement of a drilling rig on a drill site location on the Leased Premises or any land unitized or pooled therewith; and the actual commencement of the drilling of either the tophole or the lateral portion, as the case may be, of any well upon the Leased Premises or lands unitized or pooled therewith.  "Operations" also includes any testing, completing, fracturing or stimulating a well, reworking, recompleting, deepening, plugging back or repairing of a well in search for or with the intention of obtaining production of Oil and Gas, whether or not ultimately produced in paying quantities.

4.  **PAID-UP LEASE:**  This Lease is a Paid-Up Lease and shall not require the payment of any annual delay rentals to maintain the Lease in full force and effect during the Primary Term hereof.   This Lease shall not terminate for any default unless LESSOR first gives LESSEE written notice by certified mail return receipt requested, of such default, and LESSEE, if in default, fails to tender such payment to LESSOR within sixty (60) days of receipt of such notice or fails within sixty (60) days of receipt of such notice to commence the compliance with such obligations stated in said notice.

5.  **ROYALTY PAYMENTS:**  LESSEE covenants and agrees:

   (A)    For oil, to pay LESSOR eighteen percent (18%) of the net amount paid to Lessee for all oil produced, saved and sold from the Leased Premises.  Payment of royalty for oil marketed during any calendar month to be on or about the 60th day after receipt of such funds by LESSEE, subject to LESSEE's verification of LESSOR's mineral ownership.

   (B)    For gas and other hydrocarbons produced with gas, to pay LESSOR, as royalty for the gas, saved and sold from the Leased Premises, eighteen percent (18%) of the net amount realized by LESSEE for the sale and delivery of such gas.  Payment of royalty for gas marketed during any calendar month to be on or about the 60th day after receipt of such funds by LESSEE, subject to LESSEE's verification of LESSOR's mineral ownership.

Any royalty payments to be made by LESSEE to LESSOR on any Oil and Gas produced from the Leased Premises and when sold by LESSEE shall be based on the net amount realized by LESSEE, computed at the mouth of the well.

   (C)    There shall be no deductions from the royalty payments in (A) and (B) above for any costs of production, including exploring or surveying the Leased Premises for Oil and Gas, or installing, drilling, completing, equipping and producing a well.  However, such royalty payments shall be less LESSOR's pro-rata share of post-production costs.  Post-production costs include, without limitation, (i) all costs actually incurred by LESSEE and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale by LESSEE; (ii) all costs of gathering, marketing, compression, dehydration, transportation, processing and removal of liquid hydrocarbons, and other liquids or gaseous substances or impurities from the  production; and (iii) any other treatment or processing required by the purchaser or to otherwise market and sell gas, oil or any other hydrocarbons or substances produced with oil or gas.  LESSEE also may deduct from royalty payments LESSOR's prorata share of any tax imposed by any government body that is levied upon the value of production or the severance of Oil and Gas from the Leased Premises.

INITIALS - *(handwritten initials)*                    Page 1

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

6. **ADDRESS FOR PAYMENTS**: All money due under this Lease shall be paid or tendered to LESSOR at the address shown above or to the credit of LESSOR through LESSOR's agent as follows: 25% to William E. George at 82 Austin Avenue, Greenville, RI 02828, 25% to Leslie Milner at 75 Shirley Blvd., Cranston, RI 02910, 25% to Cynthia Gilliam at 8070 S.W. Valley View Court, Portland, OR 97225, and 25% to Barbara Sullivan at 334 Elmwood Avenue, Wollaston, MA 02170, and such agent shall continue as LESSOR's agent to receive any and all sums payable under this Lease regardless of changes in ownership in the Leased Premises or in the Oil and Gas or in the royalties payable under this Lease until delivery to LESSEE of notice of change of ownership.  No change of ownership in the Leased Premises or in the royalties payable under this Lease shall be binding on LESSEE until sixty (60) days after a notice is delivered to LESSEE, duly signed by the parties including a certified copy of the instruments of conveyance or assignment to such new owner, which have been properly filed of record.

7. **CESSATION OF OPERATIONS OR PRODUCTION / CONTINUOUS OPERATIONS**: If, at the expiration of the Primary Term, Oil and Gas are not being produced on the Leased Premises, or on acreage unitized or pooled therewith, but LESSEE is then engaged in drilling, completion or reworking operations thereon or shall have completed a dry hole thereon within one hundred twenty (120) days prior to the end of the Primary Term, this Lease shall remain in full force and effect so long as operations for drilling or reworking continue with no cessation of more than one hundred twenty (120) consecutive days, and if they result in the production of Oil and Gas, so long thereafter as Oil and Gas is produced from said Leased Premises or from acreage unitized or pooled therewith.  If, after the expiration of the Primary Term of this Lease and after Oil and Gas is produced from the Leased Premises or upon lands unitized or pooled therewith, the production thereof should cease from any cause, this Lease shall not terminate if LESSEE commences operations for drilling or reworking within one hundred twenty (120) days after the cessation of such production, but shall remain in force and effect so long as such operations are prosecuted with no cessation of more than one hundred twenty (120) consecutive days, and if they result in the production of Oil and Gas, so long thereafter as Oil and Gas is produced from the Leased Premises or upon lands unitized or pooled therewith.

8. **SHUT-IN PROVISION**: If, at the end of the primary term or at any time or times thereafter, there is a well or wells on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in because of (i) lack of market or market facilities (including pipelines) or available transportation on existing pipelines; (ii) the necessity to construct or repair facilities including pipeline, gas processing or treating facilities or compressors, including such facilities which may be situated on lands other than those described herein; (iii) the necessity to construct, maintain, repair or replace a pipeline(s) carrying oil or gas produced from the leased lands or lands pooled therewith; (iv) as a result of events of force majeure beyond the reasonable control of lessee; or (v) under any other such similar circumstances, this lease shall continue in force as though operations were being conducted on said land or oil or gas produced therefrom for so long as said wells are shut-in, and thereafter this lease shall continue in force as if no shut-in had occurred, provided the shut-in payment set forth in this paragraph is paid or tendered by lessee.  If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of one hundred eighty (180) consecutive days or more, and there are no other operations on said land, then before or within ten (10) days after the expiration of the one hundred eighty (180) day period of shut-in, lessee shall pay or tender by check or wire, as a shut-in royalty payment the sum of $15.00 per net acre per annum  for each acre then covered hereby for so long as all such wells are shut-in.  Lessee shall make like payments or tenders at or before the end of each annual anniversary of the shut-in of the wells if upon such anniversary this lease is being continued in force solely by the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing.

9. **POOLING and UNITIZATION**: LESSOR grants to LESSEE the right at any time and/or from time to time as deemed necessary or advisable by Lessee, to pool or consolidate the Leased Premises or any part thereof or strata under the Leased Premises with other lands, whether owned by or leased to LESSEE or owned by or leased to others, to form an oil, gas, and/or coalbed methane gas pooled unit for the purpose of drilling a well or wells thereon. Units pooled for oil shall not exceed a total of eighty (80) acres each in area and units pooled for gas or coalbed methane gas shall not exceed a total of one thousand two hundred eighty (1,280) acres each in area, unless any governmental entity having jurisdiction prescribes or permits the creation of units larger than those specified, for the drilling or operation of a well to be drilled, drilling or already drilled in which case the unit may be as large as permitted.  LESSEE may pool or consolidate acreage covered by this Lease or any portion thereof in any one or more strata.  The units formed by pooling as to any stratum or strata need not conform in size or area with the unit or units into which the Lease is pooled or consolidated as to any other stratum or strata, and oil units need not to conform as to area with gas and/or coalbed methane units.  The pooling or consolidation in one or more instances shall not exhaust the rights of LESSEE to pool this Lease or portions thereof into other units.  LESSEE shall effect such pooling or consolidation by executing a designation of unit either before or after the drilling of a unit well, with the same formality as this Lease setting forth the leases or portions thereof consolidated, and recording the same in the Recorder's Office at the courthouse in the county in which the Leased Premises are located.  LESSEE may, at its election, exercise its pooling rights before or after commencing operations for or completing an oil, gas or coalbed methane gas well on the Leased Premises, and the pooled unit may include, but not required to include, land or leases upon which a well capable of producing Oil and Gas in paying quantities has been completed or upon which operations for the drilling of a well for Oil and Gas has been commenced.  In the event of operations for drilling on or production of Oil and Gas from any part of a pooled unit which includes  all or a portion of the Leased Premises regardless of whether such operations were commenced before or after the execution of this instrument or the instrument designating the pooled unit, such operations shall be considered as operations  under this Lease whether  or not the well or wells are located on the surface of the Leased Premises and, in such event, operations  shall be deemed to have been commenced within the meaning of paragraph 4 of this Lease; and the entire acreage constituting such unit or units, as to oil, gas or coalbed methane gas, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this Lease. Any well drilled in said pooled unit whether or not located on the Leased Premises, shall nevertheless be deemed to be located upon the Leased Premises within the meaning and for the provisions and covenants of this Lease to the same effect as if all the lands comprising said unit were described in and subject to this Lease and LESSOR agrees to accept, in lieu of the royalty provided in Paragraph 5 of this Lease, that proportion of such royalty which the acreage covered by this Lease and included in such unit bears to the total number of acres comprising said pooled unit. The production from an oil well will be considered as production from the Lease or oil pooled unit which it is producing and not as production from a gas pooled unit or a coalbed methane gas pooled unit; production from a gas well will be considered as production from the Lease or gas pooled unit from which it is producing and not from an oil pooled unit or coalbed methane gas pooled unit; and production from a coalbed methane gas well will be considered as production from the Lease or coalbed methane gas pooled unit from which it is producing and not from an oil pooled unit or gas pooled unit. If the well in said pooled unit shall be shut in, the shut-in royalty provided for in Paragraph  8 shall be payable to LESSOR in the proportion that the acreage of the Leased Premises included in the unit  bears to the entire acreage so pooled or consolidated.  LESSEE shall have the right to amend, alter, correct, enlarge or diminish the size of any such pooled unit at any time in the same manner as provided in this Lease.

10. **PROPORTIONATE REDUCTION**: In the event LESSOR owns a lesser interest in the Oil and Gas in the Leased Premises or any part thereof than the entire and undivided fee simple, then the royalties, shut-in royalty payment and/or all other payments provided for shall be paid to LESSOR only in the proportion which such interest bears to the whole and undivided fee simple estate therein.  If the Leased Premises is owned by two or more parties, or the ownership of any interest is transferred by sale, devise or operation of law, the

INITIALS - *[handwritten initials]*  Page 2

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC.,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

Leased Premises, nevertheless, may be held, developed and operated as an entirety, and the royalties and shut-in royalties provided for in this Lease shall be divided among and paid to such several owners in the proportion that the interest owned by each such owner bears to the entire Leased Premises.

11. **ASSIGNMENT RIGHTS / PAYOFF LIENS**: LESSEE shall have the right to assign and transfer this Lease in whole or in part by area and/or by depth or strata at anytime, and LESSOR waives notice of any assignment or transfer of this Lease. LESSOR agrees that when and if this Lease is assigned, the assigning LESSEE shall have no further obligations to LESSOR. LESSOR further grants to the LESSEE, for the protection of LESSEE's interest hereunder, the right to pay and satisfy or reduce, either before or after maturity, any judgment, claim, lien or mortgage against LESSOR's interest in the Leased Premises and upon any such payment to become subrogated to the rights of such claimant, lien holder or mortgagor, and the right to deduct amounts so paid from all royalties or other payments payable or which may become payable to LESSOR and/or LESSOR's assigns under this Lease.

12. **SURFACE OPERATIONS**: LESSEE shall repair and restore the surface of the Leased Premises, as a result of Lessee's operations, to as close as reasonably practical the condition in which the Leased Premises existed at the time of the commencement of drilling operations and such restoration and reclamation shall be commenced within one (1) year after the conclusion of completion operations on any well drilled on the Leased Premises, weather permitting. When required by LESSOR, LESSEE will bury all pipelines below ordinary plow depth or a minimum of 18", and no well shall be drilled within two hundred (200) feet of any residence or barn now on the Leased Premises without LESSOR's prior consent.

13. **LESSOR RESTRICTIONS**: LESSOR agrees to abide by all reasonable safety policies of LESSEE with respect to LESSEE's operations, including but not limited to the following: No dwellings or structures of any kind shall be erected or moved on a drilling location within one hundred feet (100') of a well, tank battery or other related facility or appurtenance, or within twenty-five feet (25') of LESSEE's pipelines.

14. **LESSEE'S RIGHTS**: LESSEE shall have the right to use oil, gas, coalbed methane gas, water, and/or minerals for operating on the Leased Premises and the right at any time during or after the expiration of this Lease to remove all pipe, well casing, machinery, equipment or fixtures placed on the Leased Premises. LESSEE shall have the right to release this Lease or any portion thereof at anytime by giving written notice to LESSOR describing the portion which it elects to surrender as to area or depth or formation, or by returning the Lease to LESSOR with the endorsement of surrender thereof, or by recording the release or partial release of this Lease, any of which shall be a full and legal surrender of this Lease as to all of the Leased Premises or such portion thereof as the release shall indicate, and any payments due under this Lease based on net acres shall be reduced in proportion to the acreage surrendered. As to any portion of the Lease or Leased Premises so surrendered, Lessee shall have reasonable and convenient easements for any existing wells, pipelines, roadways and other facilities on the lands surrendered. LESSOR expressly acknowledges and agrees that there shall further be no covenant to develop the Leased Premises.

15. **EXISTING WELLS EXCEPTED**: LESSOR excepts and reserves from this Lease and any and all existing well(s) that may be situated on the Leased Premises. LESSEE shall not be responsible for any liabilities, including environmental or plugging obligations associated with said well(s).

16. **FORCE MAJEURE**: In the event LESSEE is unable to perform any of the acts of LESSEE by reason of force majeure, including but not limited to acts of God, adverse weather conditions, strikes, riots and governmental restrictions including but not limited to restrictions on the use of roads, the issuance of permits to drill or other state or federal orders or moratoriums related to drilling operations, or the inability to obtain a satisfactory market or pipelines or transportation for the sale of production, or the failure of purchasers or carriers to take or transport such production, or by any other cause not reasonably within LESSEE's control, this Lease shall remain in full force and effect until LESSEE can reasonably perform said act or acts or to remove the restriction causing the delay and in no event shall this Lease expire for a period of ninety (90) days after the termination or elimination of such force majeure event.

17. **TOLLING DURING DISPUTE**: LESSOR and LESSEE agree that it is in their mutual interest not to require LESSEE to engage in operations (as defined herein) during any period of time in which the validity of the Lease is challenged, contested, or disputed. If any judicial proceeding is commenced in which the validity of the Lease is disputed, or if LESSOR takes any action which would prevent LESSEE from enjoying the benefits of or complying with the terms of the Lease, then the Primary Term (if still in effect) and/or LESSEE's obligation to conduct operations on the Leased Premises or on lands unitized or pooled therewith, in order for the Lease to continue beyond the Primary Term (if the Primary Term has lapsed), shall be tolled and extended during the pendency of the dispute or judicial proceeding – from the commencement through the resolution of the dispute or, in the case of a judicial proceeding, entry of a final, non-appealable judgment – plus an additional 90 days from the resolution of the dispute or entry of the final, non-appealable judgment.

18. **INDEMNIFICATION**: LESSEE agrees to indemnify, protect, save harmless and defend LESSOR from and against any loss, claim or expense, including without limitation claims for injury or death to persons or damage to property occurring as a result of LESSEE's use of the Leased Premises, or as a result of loss, expense, injury, death or damage which would not have occurred but for LESSEE's use of the Leased Premises, except to the extent any such damage or injury is caused in whole or in part by LESSOR's negligence, gross negligence or intentional acts.

19. **NOTICE**: In the event of any default or alleged default by LESSEE in the performance of any of its obligations under this Lease, LESSOR shall notify LESSEE in writing setting out specifically in what respects LESSEE has breached this Lease. LESSEE shall then have sixty (60) days after receipt of said notice within which to dispute such alleged default or to meet or commence to meet all or any part of the default alleged by LESSOR. The service of said notice shall be precedent to the bringing of any action by LESSOR arising out of or related to this Lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on LESSEE. Neither the service of said notice nor the doing of any acts by LESSEE aimed to meet all or any part of the alleged breaches shall be deemed an admission or presumption that LESSEE has failed to perform any or all of its obligations under this Lease. All notices to LESSEE provided for in this Lease shall be sent by certified mail return receipt requested to LESSEE at LESSEE's address provided on Page One (1) of this Lease.

20. **PREFERENTIAL RIGHT TO PURCHASE**: In the event LESSOR, during the term of this Lease, receives a bona-fide offer which LESSOR is willing to accept from any party offering to pay LESSOR for an oil and gas lease covering any or all of the substances covered by this Lease and covering all or a portion of the Leased Premises, LESSOR agrees to notify LESSEE in writing of said offer immediately, including in the notice the name and address of the offeror, the price offered and all other pertinent terms and conditions of the offer. LESSEE, for a period of fifteen (15) days after receipt of the notice by certified return receipt mail, shall have the prior and preferred right and option to acquire from LESSOR a lease or other rights covering all or part of the Leased Premises at the price and according to the terms and conditions specified in the offer. If LESSEE does not respond within said fifteen (15) day notice period, it will be deemed that LESSEE waives its rights with regard to such offer.

INITIALS - *AM BS WEH*                     Page 3

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

~~21. EXTENSION OF LEASE: Prior to the expiration of the Primary Term of this Lease, LESSEE shall have the option to extend all or any portion of this Lease for an additional term of _____ (____) years, which will serve to extend the Primary Term of this Lease to a total of _____ (____) years. LESSEE shall exercise such option by tendering to LESSOR a payment in the amount of _____ per net acre. LESSOR further grants LESSEE the exclusive option and right to extend this Lease, under the same terms and conditions contained herein. Such option may be exercised by LESSEE at any time prior to the end of the original _____ (____) year Primary Term by notifying LESSOR in writing that LESSEE is exercising its right to extend the Lease and contemporaneous with said notice LESSEE shall pay or tender to LESSOR the consideration set forth above. LESSOR agrees to allow LESSEE to file of record, a notice of LESSEE's exercise of the option to extend the Primary Term of this Lease.~~

**22. PRIOR LEASE PROVISION:** LESSOR warrants that LESSOR is not currently receiving any bonus, delay rental, including storage payments or production royalty or shut-in royalties as the result of the existence of any prior oil and gas lease or storage lease covering any or all of the Leased Premises; that the Leased Premises is not currently subject to any prior oil and gas lease or storage lease; and that there are no producing wells currently existing on the Leased Premises, or upon other lands within the boundaries of a drilling or production unit utilizing all or a part of the Leased Premises. LESSOR further warrants that there are no current surface operations being conducted upon the Leased Premises in preparation for the drilling of a well upon the Leased Premises and that may be construed as extending the terms of a prior oil and gas lease that covered the Leased Premises.
INITIALS AFFIRMING ABOVE STATEMENT:

_LM  BS  WEG_ _____  _____  _____  _____

**23. SPECIAL WARRANTY:** LESSOR warrants title to the Leased Premises only as to defects arising during the time of its ownership of the Leased Premises, and not against any title defects that existed prior to such ownership. All covenants and conditions between the parties shall extend to their heirs, personal representatives, successors and assigns. It is mutually agreed that this Lease contains and expresses all of the agreements and understandings of the parties with regard to the subject matter thereof, and no implied covenant, agreement or obligation shall be read into this Lease or imposed upon the parties or either of them. LESSOR further agrees to sign such additional documents as may be reasonably requested by LESSEE to perfect LESSEE's title to the Oil and Gas leased herein.

**24. SEVERABILITY:** This Lease shall in all circumstances be construed against invalidation, termination, or forfeiture. Failure of payment of rental or royalty on any part of this Lease shall not void this Lease as to any other part. If any provision of this Lease shall be determined to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. The parties expressly agree that in the event any provision of this Lease is determined to be invalid, illegal, and unenforceable or in conflict with the law of any jurisdiction, the provision shall be revised in such manner as to be valid, legal, and enforceable.

**25. COUNTERPARTS:** This Lease may be executed either as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one Lease. Should fewer than all of the named LESSORS execute this Lease, this Lease shall be binding on only those parties who are signatories.

**26. MEMORANDUM OF LEASE:** Lessee reserves the right and option to file a Memorandum of Oil and Gas Lease in the county Recorder's Office which will in such event serve as constructive notice of the existence of this Lease.

**27. PAID-UP LEASE FORM:** Notwithstanding anything to the contrary included herein, this Lease is a Paid-Up Lease with all bonus amounts and delay rentals, if any, due under the Lease, paid in advance and no additional payment or payments of bonus or delay rentals are owed to Lessor to maintain this Lease in force and effect throughout the original Primary Term.

**28. SURFACE USE RESTRICTION CLAUSE:** Notwithstanding any provision contained in this Lease to the contrary, Lessee is prohibited from using the surface of the Leased Premises for any purpose without the prior written consent of the Lessor.

**29. ADDENDUM AND PAY LETTER ATTACHED:** This Lease is further subject to the additional terms and conditions as detailed on the Addendum to Oil and Gas Lease and the Confidential Pay Letter which is labeled **Exhibit "A"**, both of which are attached hereto and made a part hereof.

**IN WITNESS WHEREOF**, LESSORS have set their hands to this Lease. Signed and acknowledged in the presence of:


LESSOR(S):


By: _William E. George_____
   William E. George


By: _Leslie Milner_____
   Leslie Milner


By: _____
   Cynthia Gilliam


By: _Barbara Sullivan_____
   Barbara Sullivan


INITIALS - _LM  BS  WEG_        Page 4

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

### INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _Rhode Island_

COUNTY / DISTRICT OF _Providence_

On this, the _31_ day of _January_, 20 _14_ before me _Jo-Ann G Libby_, the undersigned officer, personally appeared William E. George, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

Jo-Ann G. Libby
NOTARY PUBLIC
STATE OF RI
My Commission Expires 7/15/2013

### INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _Rhode Island_

COUNTY / DISTRICT OF _Providence_

On this, the _31_ day of _January_, 20 _14_ before me _Jo-Ann G Libby_, the undersigned officer, personally appeared Leslie Milner, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

Jo-Ann G. Libby
NOTARY PUBLIC
STATE OF RI
My Commission Expires 7/15/2013

### INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _____

COUNTY / DISTRICT OF _____

On this, the _____ day of _____, 20 _____ before me _____, the undersigned officer, personally appeared Cynthia Gilliam, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

### INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _Rhode Island_

COUNTY / DISTRICT OF _Providence_

On this, the _31_ day of _January_, 20 _14_ before me _Jo-Ann G. Libby_, the undersigned officer, personally appeared Barbara Sullivan, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

Jo-Ann G. Libby
NOTARY PUBLIC
STATE OF RI
My Commission Expires 7/15/2015

INITIALS - _RM_ _BS_ _WEG_

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

## ADDENDUM TO OIL AND GAS LEASE

ATTACHED TO AND BY REFERENCE MADE A PART OF THAT CERTAIN OIL, GAS AND COALBED **METHANE LEASE DATED _____ DAY OF JANUARY, 2014, MADE AND** ENTERED INTO BY AND BETWEEN between William E. George, of 82 Austin Avenue, Greenville, RI 02828, Leslie Milner, of 75 Shirley Blvd., Cranston, RI 02910, Cynthia Gilliam, of 8070 S.W. Valley View Court, Portland, OR 97225, and Barbara Sullivan, of 334 Elmwood Ave., Wollaston, MA 02170, AS LESSOR AND **RANGE RESOURCES – APPALACHIA, LLC,** AS LESSEE.

Should there be any inconsistency between the terms and conditions set forth in the main body of this lease and the terms and conditions specified in the Addendum, the provisions of the Addendum shall prevail and supersede the inconsistent provisions of the main body of this lease.

1.) NO STORAGE OR DISPOSAL RIGHTS CLAUSE: Notwithstanding anything to the contrary contained in the Lease, Lessee is not granted any right whatsoever to use the Leasehold, or any portion thereof, for gas storage purposes. The lease also does not grant any right to dispose of any salt water or other substance beneath the leasehold premises for any purpose without the Lessor's written consent.

2.) ASSIGNMENT OF LEASE: Lessee agrees that there shall be no full assignment of this lease without Lessor's prior written consent; however, Lessee shall have the ability to sell partial interests in this lease without Lessor's written consent, as long as operational authority is not transferred from the Lessee. Lessor's consent shall not be unreasonably withheld or delayed.

3.) SHUT-IN CLAUSE: No well shall be shut-in unless: (a) the shut-in is due to force majeure; (b) the shut-in is due to pipeline or equipment breakage, damage or malfunction; or (c) the shut-in is required because Lessee, in exercise of good faith and reasonable diligence, has been unable to secure a market for the production from such well. The shut-in status of any well shall persist only for so long as it is necessary to correct, through the exercise of good faith and due diligence, the condition giving rise to the shut-in of the well. No well shall be shut-in for the direct or indirect purpose of holding oil and/or gas reserves in place.

4.) NO WARRANTY OF TITLE: Lessors make no representations or warranties as to their right, title or interest in the Leased Premises or the interests subject to this Lease, and does not warrant title to said Leased Premises or interests.

5.) AUDIT CLAUSE: Lessor, upon thirty (30) days written notice to Lessee, shall have the right to audit during normal business hours, Lessee's accounts for the purpose of verifying the accuracy of the reports and statements furnished to Lessor, and for checking the amount of payments lawfully due the Lessor under the terms of this agreement for any calendar year within the twenty-four (24) month period following the end of such calendar year. Lessee shall bear no portion of the Lessor's audit cost incurred under this paragraph. The audits shall not be conducted more than once each year without prior approval of Lessee.

6.) PUGH CLAUSE: If at any time within five (5) years after the expiration of the primary term the land covered by this lease is being held solely through production from a gas pooled unit or an oil pooled unit, then Lessee agrees as part of the consideration for this lease, to release all acreage covered by this lease and not included within such gas pooled unit or such oil pooled unit.

7.) POST PRODUCTION COSTS: Royalty payments shall be less LESSOR's pro-rata share of post-production costs. Post-production costs include, without limitation, (i) all costs actually incurred by LESSEE and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale by LESSEE; (ii) all costs of gathering, marketing, compression, dehydration, transportation, processing and removal of liquid hydrocarbons, and other liquids or gaseous substances or impurities from the production; and (iii) any other treatment or processing required by the purchaser or to otherwise market and sell gas, oil or any other hydrocarbons or substances produced with oil or gas. In no event shall the post production costs exceed $0.80 per MMBTU.

8.) UNIT SIZE LIMITATION: Notwithstanding anything to the contrary herein, the maximum size of any consolidation or unit formed by Lessee shall not exceed 800 acres.

LESSOR(S):

By: _William E. George_
William E. George

INITIALS - _AM BS WE S_          Page 6

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.18.2011

By: _____
    Leslie Miller

By: _____
    Cynthia Gilliam

By: _____
    Barbara Sullivan

INITIALS - _____   Page 7

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

## MEMORANDUM OF OIL, GAS & COALBED METHANE LEASE

THIS MEMORANDUM OF OIL, GAS & COALBED METHANE LEASE ("Memorandum"), dated this _____ day of January, 2014 by and between William E. George, of 82 Austin Avenue, Greenville, RI 02828, Leslie Milner, of 75 Shirley Blvd., Cranston, RI 02910, Cynthia Gilliam, of 8070 S.W. Valley View Court, Portland, OR 97225, and Barbara Sullivan, of 334 Elmwood Ave., Wollaston, MA 02170, hereinafter called Lessor, and RANGE RESOURCES – APPALACHIA, LLC, P.O. Box No. 30, Canonsburg, PA, 15317, Phone No., (724) 743-6700, hereinafter called Lessee, WITNESSETH –

1. For and in consideration of One Dollar ($1.00) and other good and valuable consideration paid and to be paid by Lessee to Lessor, and in further consideration of the rents reserved and the covenants and conditions more particularly set forth in that certain Oil, Gas And Coalbed Methane Lease between Lessor and Lessee dated _____, 2014 and commencing September 1, 2013, (hereinafter referred to as  the "Lease") does hereby grant, demise, lease and let exclusively unto Lessee the following described premises:
Said land is situate in Smith Township, Washington County, Commonwealth of Pennsylvania, Tax Parcel Number(s) 570-026-00-00-0015-00,   570-026-00-00-0015-01,   570-026-00-00-0015-04,   570-026-00-00-0912-00,   570-026-00-00-0013-00, 570-026-00-00-0013-01, 570-026-00-00-0014-00, being the property lying South of Raccoon Creek and referenced and described in Deed Book 290 Page 501, being all the property owned by Lessor or to which the Lessor may have any rights in said Township or adjoining Townships, containing 98.4196 acres, more or less, and being the property described in Deed Book 290, Page 501, and/or at Instrument No. N/A of the Washington County Record of Deeds.

2. TO HAVE AND TO HOLD the Premises for a term of five (5) years thereafter from the commencement date, which term may be extended for a _____ year term after the expiration of the initial primary term, pursuant to paragraph 21 of the Lease, said Lease extension period expiring _____ day of _____, and so much longer thereafter as oil, gas or coalbed methane gas or their constituents are produced or are capable of being produced on the Premises in paying quantities, or as the Premises shall be operated by Lessee in the search of oil, gas or coalbed methane gas as further set forth in the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

3. The rental, covenants, provisions and conditions of this Memorandum shall be the same as the rental, covenants, provisions and conditions set forth in the Lease to which rental, covenants, provisions and conditions reference is hereby made and the same are hereby incorporated by reference as though fully written herein.

4. In the event the Lease is in the future amended or supplemented by written instrument executed by the parties in interest thereto or shall be assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be.

5. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not have the effect of in any way modifying, supplementing or abridging the Lease or any of its provisions as the same or now or may hereafter be in force and effect.

6. This Lease may be executed either as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one Lease. Should less than all of the named Lessors execute this Lease, this Lease shall be binding on only those who are signatories thereto.

IN WITNESS WHEREOF the Lessors have hereunder set their hands. Signed and acknowledged in the presence of:

LESSOR(S):

LESSEE:
RANGE RESOURCES – APPALACHIA, LLC

By: _____
William E. George

By: _____
Leslie Milner

By: _____
Cynthia Gilliam

By: _____
Barbara Sullivan

By:  C. Barry Osborne
Its:  Vice President, Land – Southern Marcellus Shale

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _Rhode Island_

COUNTY / DISTRICT OF _Providence_

On this, the _31_ day of _January_, 20_14_ before me _Jo-Ann G. Libby_____, the undersigned officer, personally appeared William E. George, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

Jo-Ann G. Libby
NOTARY PUBLIC
STATE OF RI
My Commission Expires 7/15/2013

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _Rhode Island_

COUNTY / DISTRICT OF _Providence_

On this, the _31_ day of _January_, 20_14_ before me _Jo-Ann G. Libby_____, the undersigned officer, personally appeared Leslie Milner, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

Jo-Ann G. Libby
NOTARY PUBLIC
STATE OF RI
My Commission Expires 7/15/2013

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _____

COUNTY / DISTRICT OF _____

On this, the _____ day of _____, 20____ before me _____, the undersigned officer, personally appeared Cynthia Gilliam, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _Rhode Island_

COUNTY / DISTRICT OF _Providence_

On this, the _31_ day of _January_, 20_14_ before me _Jo-Ann G. Libby_____, the undersigned officer, personally appeared Barbara Sullivan, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

Jo-Ann G. Libby
NOTARY PUBLIC
STATE OF RI
My Commission Expires 7/15/2013

Page 2

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

**COMMONWEALTH OF PENNSYLVANIA**
**COUNTY OF WASHINGTON**

On this, the _____ day of_____, _____, before me _____,
the undersigned officer, personally appeared **C. Barry Osborne** , who acknowledged himself to be the Vice President – Land, Southern
Marcellus Shale of **RANGE RESOURCES – APPALACHIA, LLC** a Delaware limited liability company and that he as such, being
authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself
as Vice President – Land, Southern Marcellus Shale.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

## OIL AND GAS LEASE
## PAID-UP NON-SURFACE OCCUPANCY LEASE

THIS OIL AND GAS LEASE ( the "Lease") made and entered into this _____ day of January, 2014 by and between William E. George, of 82 Austin Avenue, Greenville, RI 02828, Leslie Milner, of 75 Shirley Blvd., Cranston, RI 02910, Cynthia Gilliam, of 8070 S.W. Valley View Court, Portland, OR 97225, and Barbara Sullivan, of 334 Elmwood Ave., Wollaston, MA 02170 (whether one or more, the "LESSOR"), and RANGE RESOURCES – APPALACHIA, LLC, P.O. Box 30 , Canonsburg, PA, 15317, ("LESSEE").

1.   **GRANTING CLAUSE:**   LESSOR, for and in consideration of One Dollar ($1.00) and other valuable consideration paid by LESSEE, the receipt of which is acknowledged, and the covenants and agreements contained in this Lease grants, leases and lets exclusively to LESSEE, its successors and assigns, all the oil and gas, including but not limited to coal seam gas, coalbed methane gas, coalbed methane gas, gob gas, and all associated natural gas and other hydrocarbons and non-hydrocarbons contained in, associated with, emitting from or produced/originating within any formation, gob area, mined out area, coal seams and all communicating zones, and their liquid or gaseous constituents, whether hydrocarbon or non-hydrocarbon, underlying the land herein leased (whether one or more, "Oil and Gas"). The Lease is granted for any or all of the following purposes: Exploring for by geophysical, geological, seismic, and other methods, including core drilling, drilling, operating for, producing, removing, transporting and marketing Oil and Gas; the right to stimulate all coal seams or other strata or formations using any and all methods and technology available at the time of stimulation; the right to conduct surveys (including geophysical and seismic surveys); to transport by pipelines or otherwise across and through the Leased Premises Oil and Gas from the lands covered by the Lease, or from lands unitized or pooled therewith, for so long as the transportation of such production may be desired by LESSEE; the placing of tanks, equipment, electric power lines, telephone lines, water lines, impoundments and ponds, compression and collection facilities, roads and structures for the production of Oil and Gas, together with the right to enter into and upon the lands covered by the Lease, or upon lands unitized or pooled therewith, at all times for the aforesaid purposes, and the right to conduct secondary or tertiary recovery operations by injecting gas, water and other fluids or air into subsurface strata. No roads from adjacent non-unitized or pooled properties shall be constructed on the lands covered by the Lease without LESSOR's written consent. Any equipment or pipelines from other wells not located on such lands or on lands unitized or pooled therewith shall be approved by LESSOR in writing.

2.   **DESCRIPTION OF THE LEASED LANDS:**   The lands covered by the Lease are situated in Smith Township, Washington County, Commonwealth of Pennsylvania, Tax Parcel Number(s) 570-026-00-00-0015-00, 570-026-00-00-0015-01, 570-026-00-00-0015-04, 570-026-00-00-0012-00, 570-026-00-00-0013-00, 570-026-00-00-0013-01, 570-026-00-00-0014-00, being the property lying South of Raccoon Creek and referenced and described in Deed Book 290 Page 501, being all the property owned by LESSOR or to which LESSOR may have an interest in said Township, containing 98.4196 acres, more or less, and including all adjacent or contiguous lands owned or claimed by LESSOR, although not included within the boundaries of the land particularly described above, and being the property described in Deed Book 290, Page 501, and/or at Instrument No. N/A of the Washington County Recorder of Deeds Office ("Leased Premises").

3.   **TERM OF LEASE:**   This Lease shall continue in force and the rights granted to LESSEE shall be quietly enjoyed by LESSEE for a term of five years from September 1, 2013 (the "Primary Term"), and as long thereafter as operations are conducted on the Leased Premises with no cessation for more than one hundred twenty (120) consecutive days, or as long as well(s) producing Oil and Gas in paying quantities or well(s) capable of producing Oil and Gas in paying quantities from the Leased Premises or from lands unitized or pooled therewith, in the sole judgment of LESSEE, or as the Leased Premises shall be operated by LESSEE or as otherwise maintained in full force and effect pursuant to the other provisions in this Lease. For purposes of this Lease, the word "operations" shall be defined as any one or more of the following: Making applications for any necessary permits required for operations, grading or preparation of a drill site; the placement of a drilling rig on a drill site location on the Leased Premises or any land unitized or pooled therewith; and the actual commencement of the drilling of either the tophole or the lateral portion, as the case may be, of any well upon the Leased Premises or lands unitized or pooled therewith. "Operations" also includes any testing, completing, fracturing or stimulating a well, reworking, recompleting, deepening, plugging back or repairing of a well in search for or with the intention of obtaining production of Oil and Gas, whether or not ultimately produced in paying quantities.

4.   **PAID-UP LEASE:**   This Lease is a Paid-Up Lease and shall not require the payment of any annual delay rentals to maintain the Lease in full force and effect during the Primary Term hereof.   This Lease shall not terminate for any default unless LESSOR first gives LESSEE written notice by certified mail return receipt requested, of such default, and LESSEE, if in default, fails to tender such payment to LESSOR within sixty (60) days of receipt of such notice or fails within sixty (60) days of receipt of such notice to commence the compliance with such obligations stated in said notice.

5.   **ROYALTY PAYMENTS:**   LESSEE covenants and agrees:

(A)   For oil, to pay LESSOR eighteen percent (18%) of the net amount paid to Lessee for all oil produced, saved and sold from the Leased Premises. Payment of royalty for oil marketed during any calendar month to be on or about the 60th day after receipt of such funds by LESSEE, subject to LESSEE's verification of LESSOR's mineral ownership.

(B)   For gas and other hydrocarbons produced with gas, to pay LESSOR, as royalty for the gas, saved and sold from the Leased Premises, eighteen percent (18%) of the net amount realized by LESSEE for the sale and delivery of such gas. Payment of royalty for gas marketed during any calendar month to be on or about the 60th day after receipt of such funds by LESSEE, subject to LESSEE's verification of LESSOR's mineral ownership.

Any royalty payments to be made by LESSEE to LESSOR on any Oil and Gas produced from the Leased Premises and when sold by LESSEE shall be based on the net amount realized by LESSEE, computed at the mouth of the well.

(C)   There shall be no deductions from the royalty payments in (A) and (B) above for any costs of production, including exploring or surveying the Leased Premises for Oil and Gas, or installing, drilling, completing, equipping and producing a well. However, such royalty payments shall be less LESSOR's pro-rata share of post-production costs. Post-production costs include, without limitation, (i) all costs actually incurred by LESSEE and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale by LESSEE; (ii) all costs of gathering, marketing, compression, dehydration, transportation, processing and removal of liquid hydrocarbons, other liquids or gaseous substances or impurities from the production; and (iii) any other treatment or processing required by the purchaser or to otherwise market and sell gas, oil or any other hydrocarbons or substances produced with oil or gas. LESSEE also may deduct from royalty payments LESSOR's prorata share of any tax imposed by any government body that is levied upon the value of production or the severance of Oil and Gas from the Leased Premises.

INITIALS - _____

Page 1

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

6.   **ADDRESS FOR PAYMENTS**: All money due under this Lease shall be paid or tendered to LESSOR at the address shown above or to the credit of LESSOR through LESSOR's agent as follows: 25% to William E. George at 82 Austin Avenue, Greenville, RI 02828, 25% to Leslie Milner at 75 Shirley Blvd., Cranston, RI 02910, 25% to Cynthia Gilliam at 8070 S.W. Valley View Court, Portland, OR 97225, and 25% to Barbara Sullivan at 334 Elmwood Avenue, Wollaston, MA 02170, and such agent shall continue as LESSOR's agent to receive any and all sums payable under this Lease regardless of changes in ownership in the Leased Premises, or in the Oil and Gas or in the royalties payable under this Lease until delivery to LESSEE of notice of change of ownership.  No change of ownership in the Leased Premises or in the royalties payable under this Lease shall be binding on LESSEE until sixty (60) days after a notice is delivered to LESSEE, duly signed by the parties including a certified copy of the instruments of conveyance or assignment to such new owner, which have been properly filed of record.

7.   **CESSATION OF OPERATIONS OR PRODUCTION / CONTINUOUS OPERATIONS**: If, at the expiration of the Primary Term, Oil and Gas are not being produced on the Leased Premises, or on acreage unitized or pooled therewith, but LESSEE is then engaged in drilling, completion or reworking operations thereon or shall have completed a dry hole thereon within one hundred twenty (120) days prior to the end of the Primary Term, this Lease shall remain in full force and effect so long as operations for drilling or reworking continue with no cessation of more than one hundred twenty (120) consecutive days, and if they result in the production of Oil and Gas, so long thereafter as Oil and Gas is produced from said Leased Premises or from acreage unitized or pooled therewith.  If, after the expiration of the Primary Term of this Lease and after Oil and Gas is produced from the Leased Premises or upon lands unitized or pooled therewith, the production thereof should cease from any cause, this Lease shall not terminate if LESSEE commences operations for drilling or reworking within one hundred twenty (120) days after the cessation of such production, but shall remain in force and effect so long as such operations are prosecuted with no cessation of more than one hundred twenty (120) consecutive days, and if they result in the production of Oil and Gas, so long thereafter as Oil and Gas is produced from the Leased Premises or upon lands unitized or pooled therewith.

8.   **SHUT-IN PROVISION**: If, at the end of the primary term or at any time or times thereafter, there is a well or wells on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in because of (i) lack of market or market facilities (including pipelines) or available transportation on existing pipelines; (ii) the necessity to construct or repair facilities including pipeline, gas processing or treating facilities or compressors, including such facilities which may be situated on lands other than those described herein; (iii) the necessity to construct, maintain, repair or replace a pipeline(s) carrying oil or gas produced from the leased lands or lands pooled therewith; (iv) as a result of events of force majeure beyond the reasonable control of lessee; or (v) under any other such similar circumstances, this lease shall continue in force as though operations were being conducted on said land or oil or gas produced therefrom for so long as said wells are shut-in, and thereafter this lease shall continue in force as if no shut-in had occurred, provided the shut-in payment set forth in this paragraph is paid or tendered by lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of one hundred eighty (180) consecutive days or more, and there are no other operations on said land, then before or within ten (10) days after the expiration of the one hundred eighty (180) day period of shut-in, lessee shall pay or tender by check or wire, as a shut-in royalty payment the sum of $15.00 per net acre per annum for each acre then covered hereby for so long as all such wells are shut-in.  Lessee shall make like payments or tenders at or before the end of each annual anniversary of the shut-in of the wells if upon such anniversary this lease is being continued in force solely by the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing.

9.   **POOLING and UNITIZATION**: LESSOR grants to LESSEE the right at any time and/or from time to time as deemed necessary or advisable by Lessee, to pool or consolidate the Leased Premises or any part thereof or strata under the Leased Premises with other lands, whether owned by or leased to LESSEE or owned by or leased to others, to form an oil, gas, and/or coalbed methane gas pooled unit for the purpose of drilling a well or wells thereon. Units pooled for oil shall not exceed a total of eighty (80) acres each in area and units pooled for gas or coalbed methane gas shall not exceed a total of one thousand two hundred eighty (1,280) acres each in area, unless any governmental entity having jurisdiction prescribes or permits the creation of units larger than those specified, for the drilling or operation of a well to be drilled, drilling or already drilled in which case the unit may be as large as permitted.  LESSEE may pool or consolidate acreage covered by this Lease or any portion thereof in any one or more strata.  The units formed by pooling as to any stratum or strata need not conform in size or area with the unit or units into which the Lease is pooled or consolidated as to any other stratum or strata, and oil units need not to conform as to area with gas and/or coalbed methane units.  The pooling or consolidation in one or more instances shall not exhaust the rights of LESSEE to pool this Lease or portions thereof into other units.  LESSEE shall effect such pooling or consolidation by executing a designation of unit either before or after the drilling of a unit well, with the same formality as this Lease setting forth the leases or portions thereof consolidated, and recording the same in the Recorder's Office at the courthouse in the county in which the Leased Premises are located.  LESSEE may, at its election, exercise its pooling rights before or after commencing operations for or completing an oil, gas or coalbed methane gas well on the Leased Premises, and the pooled unit may include, but is not required to include, land or leases upon which a well capable of producing Oil and Gas in paying quantities has been completed or upon which operations for the drilling of a well for Oil and Gas has been commenced.  In the event of operations for drilling on or production of Oil and Gas from any part of a pooled unit which includes  all or a portion of the Leased Premises regardless of whether such operations were commenced before or after the execution of this instrument or the instrument designating the pooled unit, such operations shall be considered as operations under this Lease whether  or not the well or wells are located on the surface of the Leased Premises and, in such event, operations  shall be deemed to have been commenced within the meaning of paragraph 4 of this Lease; and the entire acreage constituting such unit or units, as to oil, gas or coalbed methane gas, shall be treated for all purposes, except that payment of royalties on production from the pooled unit, as if the same were included in this Lease. Any well drilled in said pooled unit whether or not located on the Leased Premises, shall nevertheless be deemed to be located upon the Leased Premises within the meaning and for the provisions and covenants of this Lease to the same effect as if all the lands comprising said unit were described in and subject to this Lease and LESSOR agrees to accept, in lieu of the royalty provided in Paragraph 5 of this Lease, that proportion of such royalty which the acreage covered by this Lease and included in such unit bears to the total number of acres comprising said pooled unit. The production from an oil well will be considered as production from the Lease or oil pooled unit which it is producing and not as production from a gas pooled unit or a coalbed methane gas pooled unit; production from a gas well will be considered as production from the Lease or gas pooled unit from which it is producing and not from an oil pooled unit or coalbed methane gas pooled unit; and production from a coalbed methane gas well will be considered as production from the Lease or coalbed methane gas pooled unit from which it is producing and not from an oil pooled unit or gas pooled unit.  If the well in said pooled unit shall  be shut in, the shut-in royalty provided for in Paragraph 8 shall be payable to LESSOR  in the proportion that the acreage of the Leased Premises included in the unit  bears to the entire acreage so pooled or consolidated.  LESSEE shall have the right to amend, alter, correct, enlarge or diminish the size of any such pooled unit at any time in the same manner as provided in this Lease.

10.   **PROPORTIONATE REDUCTION**: In the event LESSOR owns a lesser interest in the Oil and Gas in the Leased Premises or any part thereof than the entire and undivided fee simple, then the royalties, shut-in royalty payment and/or all other payments provided for shall be paid to LESSOR only in the proportion which such interest bears to the whole and undivided fee simple estate therein.  If the Leased Premises is owned by two or more parties, or the ownership of any interest is transferred by sale, devise or operation of law, the

Page 2

INITIALS - ⟨signature⟩

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

Leased Premises, nevertheless, may be held, developed and operated as an entirety, and the royalties and shut-in royalties provided for in this Lease shall be divided among and paid to such several owners in the proportion that the interest owned by each such owner bears to the entire Leased Premises.

**11. ASSIGNMENT RIGHTS / PAYOFF LIENS:** LESSEE shall have the right to assign and transfer this Lease in whole or in part by area and/or by depth or strata at anytime, and LESSOR waives notice of any assignment or transfer of this Lease. LESSOR agrees that when and if this Lease is assigned, the assigning LESSEE shall have no further obligations to LESSOR. LESSOR further grants to the LESSEE, for the protection of LESSEE's interest hereunder, the right to pay and satisfy or reduce, either before or after maturity, any judgment, claim, lien or mortgage against LESSOR's interest in the Leased Premises and upon any such payment to become subrogated to the rights of such claimant, lien holder or mortgagor, and the right to deduct amounts so paid from all royalties or other payments payable or which may become payable to LESSOR and/or LESSOR's assigns under this Lease.

**12. SURFACE OPERATIONS:** LESSEE shall repair and restore the surface of the Leased Premises, as a result of LESSEE's operations, to as close as reasonably practical the condition in which the Leased Premises existed at the time of the commencement of drilling operations and such restoration and reclamation shall be commenced within one (1) year after the conclusion of completion operations on any well drilled on the Leased Premises, weather permitting. When required by LESSOR, LESSEE will bury all pipelines below ordinary plow depth or a minimum of 18", and no well shall be drilled within two hundred (200) feet of any residence or barn now on the Leased Premises without LESSOR's prior consent.

**13. LESSOR RESTRICTIONS:** LESSOR agrees to abide by all reasonable safety policies of LESSEE with respect to LESSEE's operations, including but not limited to the following: No dwellings or structures of any kind shall be erected or moved on a drilling location within one hundred feet (100') of a well, tank battery or other related facility or appurtenance, or within twenty-five feet (25') of LESSEE's pipelines.

**14. LESSEE'S RIGHTS:** LESSEE shall have the right to use oil, gas, coalbed methane gas, water, and/or minerals for operating on the Leased Premises and the right at any time during or after the expiration of this Lease to remove all pipe, well casing, machinery, equipment or fixtures placed on the Leased Premises. LESSEE shall have the right to release this Lease or any portion thereof at anytime by giving written notice to LESSOR describing the portion which it elects to surrender as to area or depth or formation, or by returning the Lease to LESSOR with the endorsement of surrender thereof, or by recording the release or partial release of this Lease, any of which shall be a full and legal surrender of this Lease as to all of the Leased Premises or such portion thereof as the release shall indicate, and any payments due under this Lease based on net acres shall be reduced in proportion to the acreage surrendered. As to any portion of the Lease or Leased Premises so surrendered, Lessee shall have reasonable and convenient easements for any existing wells, pipelines, roadways and other facilities on the lands surrendered. LESSOR expressly acknowledges and agrees that there shall further be no covenant to develop the Leased Premises.

**15. EXISTING WELLS EXCEPTED:** LESSOR excepts and reserves from this Lease any and all existing well(s) that may be situated on the Leased Premises. LESSEE shall not be responsible for any liabilities, including environmental or plugging obligations associated with said well(s).

**16. FORCE MAJEURE:** In the event LESSEE is unable to perform any of the acts of LESSEE by reason of force majeure, including but not limited to acts of God, adverse weather conditions, strikes, riots and governmental restrictions including but not limited to restrictions on the use of roads, the issuance of permits to drill or other state or federal orders or moratoriums related to drilling operations, or the inability to obtain a satisfactory market or pipelines or transportation for the sale of production, or the failure of purchasers or carriers to take or transport such production, or by any other cause not reasonably within LESSEE's control, this Lease shall remain in full force and effect until LESSEE can reasonably perform said act or acts or to remove the restriction causing the delay and in no event shall this Lease expire for a period of ninety (90) days after the termination or elimination of such force majeure event.

**17. TOLLING DURING DISPUTE:** LESSOR and LESSEE agree that it is in their mutual interest not to require LESSEE to engage in operations (as defined herein) during any period of time in which the validity of the Lease is challenged, contested, or disputed. If any judicial proceeding is commenced in which the validity of the Lease is disputed, or if LESSOR takes any action which would prevent LESSEE from enjoying the benefits of or complying with the terms of the Lease, then the Primary Term (if still in effect) and/or LESSEE's obligation to conduct operations on the Leased Premises or on lands unitized or pooled therewith, in order for the Lease to continue beyond the Primary Term (if the Primary Term has lapsed), shall be tolled and extended during the pendency of the dispute or judicial proceeding – from its commencement through the resolution of the dispute or, in the case of a judicial proceeding, entry of a final, non-appealable judgment – plus an additional 90 days from the resolution of the dispute or entry of the final, non-appealable judgment.

**18. INDEMNIFICATION:** LESSEE agrees to indemnify, protect, save harmless and defend LESSOR from and against any loss, claim or expense, including without limitation claims for injury or death to persons or damage to property occurring as a result of LESSEE's use of the Leased Premises, or as a result of loss, expense, injury, death or damage which would not have occurred but for LESSEE's use of the Leased Premises, except to the extent any such damage or injury is caused in whole or in part by LESSOR's negligence, gross negligence or intentional acts.

**19. NOTICE:** In the event of any default or alleged default by LESSEE in the performance of any of its obligations under this Lease, LESSOR shall notify LESSEE in writing setting out specifically in what respects LESSEE has breached this Lease. LESSEE shall then have sixty (60) days after receipt of said notice within which to dispute such alleged default or to meet or commence to meet all or any part of the default alleged by LESSOR. The service of said notice shall be precedent to the bringing of any action by LESSOR arising out of or related to this Lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on LESSEE. Neither the service of said notice nor the doing of any acts by LESSEE aimed to meet all or any part of the alleged breaches shall be deemed an admission or presumption that LESSEE has failed to perform any or all of its obligations under this Lease. All notices to LESSEE provided for in this Lease shall be sent by certified mail return receipt requested to LESSEE at LESSEE's address provided on Page One (1) of this Lease.

**20. PREFERENTIAL RIGHT TO PURCHASE :** In the event LESSOR, during the term of this Lease, receives a bona-fide offer which LESSOR is willing to accept from any party offering to pay LESSOR for an oil and gas lease covering any or all of the substances covered by this Lease and covering all or a portion of the Leased Premises, LESSOR agrees to notify LESSEE in writing of said offer immediately, including in the notice the name and address of the offeror, the price offered and all other pertinent terms and conditions of the offer. LESSEE, for a period of fifteen (15) days after receipt of the notice by certified return receipt mail, shall have the prior and preferred right and option to acquire from LESSOR a lease or other rights covering all or part of the Leased Premises at the price and according to the terms and conditions specified in the offer. If LESSEE does not respond within said fifteen (15) day notice period, it will be deemed that LESSEE waives its rights with regard to such offer.

INITIALS -

Page 3

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

21. ~~EXTENSION OF LEASE: Prior to the expiration of the Primary Term of this Lease, LESSEE shall have the option to extend all or any portion of the Lease for an additional term of _____ (_____) years. LESSEE shall exercise such option by tendering to LESSOR a payment in the amount of _____ per net acre. herein. Such option may be exercised by LESSEE at any time prior to the end of the original _____ (_____) year Primary Term by notifying LESSOR in writing that LESSEE is exercising its right to extend this Lease and contemporaneous with said notice LESSEE shall pay or tender to LESSOR the consideration set forth above. LESSOR agrees to allow LESSEE to file of record, a notice of LESSEE's exercise of the option to extend the Primary Term of this Lease.~~

22. **PRIOR LEASE PROVISION:** LESSOR warrants that LESSOR is not currently receiving any bonus, delay rental, including storage payments or production royalty or shut-in royalties as the result of the existence of any prior oil and gas lease or storage lease covering any or all of the Leased Premises; that the Leased Premises is not currently subject to any prior oil and gas lease or storage lease; and that there are no producing wells currently existing on the Leased Premises, or upon other lands within the boundaries of a drilling or production unit utilizing all or a part of the Leased Premises. LESSOR further warrants that there are no current surface operations being conducted upon the Leased Premises in preparation for the drilling of a well upon the Leased Premises and that may be construed as extending the terms of a prior oil and gas lease that covered the Leased Premises.

**INITIALS AFFIRMING ABOVE STATEMENT:**

_Cy_ _____ _____ _____ _____ _____ _____

23. **SPECIAL WARRANTY:** LESSOR warrants title to the Leased Premises only as to defects arising during the time of its ownership of the Leased Premises, and not against any title defects that existed prior to such ownership. All covenants and conditions between the parties shall extend to their heirs, personal representatives, successors and assigns. It is mutually agreed that this Lease contains and expresses all of the agreements and understandings of the parties with regard to the subject matter thereof, and no implied covenant, agreement or obligation shall be read into this Lease or imposed upon the parties or either of them. LESSOR further agrees to sign such additional documents as may be reasonably requested by LESSEE to perfect LESSEE's title to the Oil and Gas leased herein.

24. **SEVERABILITY:** This Lease shall in all circumstances be construed against invalidation, termination, or forfeiture. Failure of payment of rental or royalty on any part of this Lease shall not void this Lease as to any other part. If any provision of this Lease be determined to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. The parties expressly agree that in the event any provision of this Lease is determined to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the provision shall be revised in such manner as to be valid, legal, and enforceable.

25. **COUNTERPARTS:** This Lease may be executed either as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one Lease. Should fewer than all of the named LESSORS execute this Lease, this Lease shall be binding on only those parties who are signatories.

26. **MEMORANDUM OF LEASE:** Lessee reserves the right and option to file a Memorandum of Oil and Gas Lease in the county Recorder's Office which will in such event serve as constructive notice of the existence of this Lease.

27. **PAID-UP LEASE FORM:** Notwithstanding anything to the contrary included herein, this Lease is a Paid-Up Lease with all bonus amounts and delay rentals, if any, due under the Lease, paid in advance and no additional payment or payments of bonus or delay rentals are owed to Lessor to maintain this Lease in force and effect throughout the original Primary Term.

28. **SURFACE USE RESTRICTION CLAUSE:** Notwithstanding any provision contained in this Lease to the contrary, Lessee is prohibited from using the surface of the Leased Premises for any purpose without the prior written consent of the Lessor.

29. **ADDENDUM AND PAY LETTER ATTACHED:** This Lease is further subject to the additional terms and conditions as detailed on the Addendum to Oil and Gas Lease and the Confidential Pay Letter which is labeled **Exhibit "A"**, both of which are attached hereto and made a part hereof.

**IN WITNESS WHEREOF,** LESSORS have set their hands to this Lease. Signed and acknowledged in the presence of:

**LESSOR(S):**

By: _____
    William E. George

By: _____
    Leslie Milner

By: _Cynthia Gill_ (signature) _____
    Cynthia Gilliam

By: _____
    Barbara Sullivan

INITIALS - _Cy_ _____          Page 4

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _____

COUNTY / DISTRICT OF _____

On this, the _____ day of _____, 20___ before me _____, the undersigned officer, personally appeared William E. George, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _____

COUNTY / DISTRICT OF _____

On this, the _____ day of _____, 20___ before me _____, the undersigned officer, personally appeared Leslie Milner, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _Oregon_

COUNTY / DISTRICT OF _Washington_

On this, the 29th day of _January_, 2014 before me _Jorge Salmeron_, the undersigned officer, personally appeared Cynthia Gilliam, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

```
OFFICIAL SEAL
JORGE L SALMERON
NOTARY PUBLIC - OREGON
COMMISSION NO. A464285
MY COMMISSION EXPIRES DECEMBER 14, 2015
```

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _____

COUNTY / DISTRICT OF _____

On this, the _____ day of _____, 20___ before me _____, the undersigned officer, personally appeared Barbara Sullivan, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

INITIALS - _Cg_

Page 5

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

# ADDENDUM TO OIL AND GAS LEASE

ATTACHED TO AND BY REFERENCE MADE A PART OF THAT CERTAIN OIL, GAS AND COALBED **METHANE LEASE DATED _____ DAY OF JANUARY, 2014, MADE AND** ENTERED INTO BY AND BETWEEN between William E. George, of 82 Austin Avenue, Greenville, RI 02828, Leslie Milner, of 75 Shirley Blvd., Cranston, RI 02910, Cynthia Gilliam, of 8070 S.W. Valley View Court, Portland, OR 97225, and Barbara Sullivan, of 334 Elmwood Ave., Wollaston, MA 02170, AS LESSOR AND **RANGE RESOURCES – APPALACHIA, LLC, AS LESSEE.**

Should there be any inconsistency between the terms and conditions set forth in the main body of this lease and the terms and conditions specified in the Addendum, the provisions of the Addendum shall prevail and supersede the inconsistent provisions of the main body of this lease.

1.) NO STORAGE OR DISPOSAL RIGHTS CLAUSE: Notwithstanding anything to the contrary contained in the Lease, Lessee is not granted any right whatsoever to use the Leasehold, or any portion thereof, for gas storage purposes. The lease also does not grant any right to dispose of any salt water or other substance beneath the leasehold premises for any purpose without the Lessor's written consent.

2.) ASSIGNMENT OF LEASE: Lessee agrees that there shall be no full assignment of this lease without Lessor's prior written consent; however, Lessee shall have the ability to sell partial interests in this lease without Lessor's written consent, as long as operational authority is not transferred from the Lessee. Lessor's consent shall not be unreasonably withheld or delayed.

3.) SHUT-IN CLAUSE: No well shall be shut-in unless: (a) the shut-in is due to force majeure; (b) the shut-in is due to pipeline or equipment breakage, damage or malfunction; or (c) the shut-in is required because Lessee, in exercise of good faith and reasonable diligence, has been unable to secure a market for the production from such well. The shut-in status of any well shall persist only for so long as it is necessary to correct, through the exercise of good faith and due diligence, the condition giving rise to the shut-in of the well. No well shall be shut-in for the direct or indirect purpose of holding oil and/or gas reserves in place.

4.) NO WARRANTY OF TITLE: Lessors make no representations or warranties as to their right, title or interest in the Leased Premises or the interests subject to this Lease, and does not warrant title to said Leased Premises or interests.

5.) AUDIT CLAUSE: Lessor, upon thirty (30) days written notice to Lessee, shall have the right to audit during normal business hours, Lessee's accounts for the purpose of verifying the accuracy of the reports and statements furnished to Lessor, and for checking the amount of payments lawfully due the Lessor under the terms of this agreement for any calendar year within the twenty-four (24) month period following the end of such calendar year. Lessee shall bear no portion of the Lessor's audit cost incurred under this paragraph. The audits shall not be conducted more than once each year without prior approval of Lessee.

6.) PUGH CLAUSE: If at any time within five (5) years after the expiration of the primary term the land covered by this lease is being held solely through production from a gas pooled unit or an oil pooled unit, then Lessee agrees as part of the consideration for this lease, to release all acreage covered by this lease and not included within such gas pooled unit or such oil pooled unit.

7.) POST PRODUCTION COSTS: Royalty payments shall be less LESSOR's pro-rata share of post-production costs. Post-production costs include, without limitation, (i) all costs actually incurred by LESSEE and all losses of produced volumes whether by use as fuel, line loss, flaring, venting or otherwise from and after the wellhead to the point of sale by LESSEE; (ii) all costs of gathering, marketing, compression, dehydration, transportation, processing and removal of liquid hydrocarbons, and other liquids or gaseous substances or impurities from the production; and (iii) any other treatment or processing required by the purchaser or to otherwise market and sell gas, oil or any other hydrocarbons or substances produced with oil or gas. In no event shall the post production costs exceed $0.80 per MMBTU.

8.) UNIT SIZE LIMITATION: Notwithstanding anything to the contrary herein, the maximum size of any consolidation or unit formed by Lessee shall not exceed 800 acres.

LESSOR(S):

By: _____
William E. George

INITIALS - _____

Page 6

This document was prepared by and when recorded return to:
Range Resources – Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

By: _____
     Leslie Milner

By: _____
     Cynthia Gilliam

By: _____
     Barbara Sullivan

INITIALS - _____

Page 7

This document was prepared by and when recorded return to:
Range Resources -- Appalachia, LLC,
P. O. Box 30, Canonsburg, PA 15317

PA OGCBM-PU-NSO 5.16.2011

# MEMORANDUM OF OIL, GAS & COALBED METHANE LEASE

THIS MEMORANDUM OF OIL, GAS & COALBED METHANE LEASE ("Memorandum"), dated this ____ day of January, 2014 by and between William E. George, of 82 Austin Avenue, Greenville, RI 02828, Leslie Milner, of 75 Shirley Blvd., Cranston, RI 02910, Cynthia Gilliam, of 8070 S.W. Valley View Court, Portland, OR 97225, and Barbara Sullivan, of 334 Elmwood Ave., Wollaston, MA 02170, hereinafter called Lessor, and RANGE RESOURCES – APPALACHIA, LLC, P.O. Box No. 30, Canonsburg, PA, 15317, Phone No., (724) 743-6700, hereinafter called Lessee, WITNESSETH:

1. For and in consideration of One Dollar ($1.00) and other good and valuable consideration paid and to be paid by Lessee to Lessor, and in further consideration of the rents reserved and the covenants and conditions more particularly set forth in that certain Oil, Gas And Coalbed Methane Lease between Lessor and Lessee dated _____, 2014 and commencing September 1, 2013, (hereinafter referred to as the "Lease") does hereby grant, demise, lease and let exclusively unto Lessee the following described premises:
Said land is situate in Smith Township, Washington County, Commonwealth of Pennsylvania, Tax Parcel Number(s) 570-026-00-00-0015-00, 570-026-00-00-0015-01, 570-026-00-00-0015-04, 570-026-00-00-0012-00, 570-026-00-00-0013-00, 570-026-00-00-0013-01, 570-026-00-00-0014-00, being the property lying South of Raccoon Creek and referenced and described in Deed Book 290 Page 501, being all the property owned by Lessor or to which the Lessor may have any rights in said Township or adjoining Townships, containing 98.4196 acres, more or less, and being the property described in Deed Book 290, Page 501, and/or at Instrument No. N/A of the Washington County Record of Deeds.

2. TO HAVE AND TO HOLD the Premises for a term of five (5) years thereafter from the commencement date, which term may be extended for a _____ year term after the expiration of the initial primary term, pursuant to paragraph 21 of the Lease, said Lease extension period expiring _____ day of ____ _____ and so much longer thereafter as oil, gas or coalbed methane gas or their constituents are produced or are capable of being produced on the Premises in paying quantities, or as the Premises shall be operated by Lessee in the search of oil, gas or coalbed methane gas as further set forth in the Lease, unless earlier terminated in accordance with the terms and provisions of the Lease.

3. The rental, covenants, provisions and conditions of this Memorandum shall be the same as the rental, covenants, provisions and conditions set forth in the Lease to which rental, covenants, provisions and conditions reference is hereby made and the same are hereby incorporated by reference as though fully written herein.

4. In the event the Lease is in the future amended or supplemented by written instrument executed by the parties in interest thereto or shall be assigned or terminated in any manner permitted under the terms thereof, then without any further act or instrument whatsoever, this Memorandum shall likewise and to the same effect be amended, assigned or terminated, as the case may be.

5. This Memorandum is executed in simplified short form for the convenience of the parties and for the purpose of recording the same and this Memorandum shall not have the effect of in any way modifying, supplementing or abridging the Lease or any of its provisions as the same or now or may hereafter be in force and effect.

6. This Lease may be executed either as one instrument or in several partially executed counterparts and the original and all counterparts shall be construed together and shall constitute one Lease. Should less than all of the named Lessors execute this Lease, this Lease shall be binding on only those who are signatories thereto.

IN WITNESS WHEREOF the Lessors have hereunder set their hands. Signed and acknowledged in the presence of:

LESSOR(S):

By: _____
William E. George

By: _____
Leslie Milner

By: _____
Cynthia Gilliam

By: _____
Barbara Sullivan

LESSEE:
RANGE RESOURCES – APPALACHIA, LLC

By: _____
By: C. Barry Osborne
Its: Vice President, Land – Southern Marcellus Shale

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _____

COUNTY / DISTRICT OF _____

On this, the _____ day of _____, 20____ before me _____, the undersigned officer, personally appeared William E. George, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
            Notary Public

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _____

COUNTY / DISTRICT OF _____

On this, the _____ day of _____, 20____ before me _____, the undersigned officer, personally appeared Leslie Milner, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
            Notary Public

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _Oregon_

COUNTY / DISTRICT OF _Washington_

On this, the _29th_ day of _June_, 20_14_ before me _Jorge Salmeron_, the undersigned officer, personally appeared Cynthia Gilliam, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
            Notary Public

> OFFICIAL SEAL
> JORGE L SALMERON
> NOTARY PUBLIC - OREGON
> COMMISSION NO. A464265
> MY COMMISSION EXPIRES DECEMBER 14, 2015

## INDIVIDUAL ACKNOWLEDGMENT

COMMONWEALTH / STATE OF _____

COUNTY / DISTRICT OF _____

On this, the _____ day of _____, 20____ before me _____, the undersigned officer, personally appeared Barbara Sullivan, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
            Notary Public

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

**COMMONWEALTH OF PENNSYLVANIA**
**COUNTY OF WASHINGTON**

On this, the _____ day of_____, _____, before me _____,
the undersigned officer, personally appeared **C. Barry Osborne** , who acknowledged himself to be the Vice President – Land, Southern
Marcellus Shale of **RANGE RESOURCES – APPALACHIA, LLC** a Delaware limited liability company and that he as such, being
authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the company by himself
as Vice President – Land, Southern Marcellus Shale.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
                    Notary Public

# EXHIBIT B



R0017JGR    WCRODG312

# OIL, GAS AND MINERAL DEED

Made the __1__ day of __APRIL__, 2015

BETWEEN   WILLIAM E. GEORGE of Greenville, Rhode Island (hereinafter referred to as the "Grantor"),

and

WILLIAM E. GEORGE and PAULA T. GEORGE, TRUSTEES
OF THE REVOCABLE LIVING TRUST AGREEMENT OF
WILLIAM E. GEORGE - 2015 (hereinafter referred to as the "Grantee"),

WITNESSETH, that in consideration of One Dollar ($1.00), in hand paid, the receipt whereof is hereby acknowledged, the said Grantor does hereby grant and convey to the said Grantee, Grantor's undivided TWENTY-FIVE PERCENT (25%) interest in and to all of the oil, gas and other minerals underlying the property described below and all of the shale(s) in which such oil, gas(es) or other hydrocarbons may exist or from which such oil, gas(es) or other hydrocarbons may emanate or be produced, including, but not limited to, all oil(s), gas(es) and other hydrocarbons of all natures and descriptions whatsoever and all formations and horizons of all natures or descriptions whatsoever in which such oil(s) or gas(es) may exist or from which such oil(s), gas(es) or other hydrocarbons may emanate or be produced by any technology whether now known or hereafter developed in and under and that may be produced from the following described lands situate in Smith Township, Washington County, Pennsylvania, bounded and described in that certain deed from John W. Keys and Mary Keys, his wife, to Pittsburgh (sic) and Eastern Coal Company, a Corporation or body politic, recorded in Deed Book Volume 290, Page 501.

BEING designated as Parcel ID Nos. 570-026-00-00-0015-00 (87.6377 ac.), 570-026-00-00-0015-01 (Lot 2-1.00 ac.), 570-026-00-00-0015-02 (Lot 1), 570-026-00-00-015-03 (Lot 2 2.0 ac.), 570-026-00-00-0015-04 (Lot 5 2.0 ac.), 570-026-00-00-0012-00 (Lot 1.7 ac.), 570-026-00-00-0013-00 (Lot 1.1 ac.), 570-026-00-00-0013-01 (Vacant Lot 1 acre or less) and 570-026-00-00-0014-00 (Lot 2.1 ac.).

UNDER AND SUBJECT to all exceptions and reservations of record.

FOR CHAIN OF TITLE, see Affidavit of Heirship recorded at Deed Book Volume **201509325** Page_____ on April __2__, 2015 in the Recorder of Deeds Office of Washington County.

**THIS TRANSFER IS EXEMPT FROM REALTY TRANSFER TAX PURSUANT TO 72 P.S. § 8102-C.3(8.1), AS IT IS A TRANSFER TO THE TRUSTEES OF A LIVING TRUST FROM THE SETTLOR OF THE LIVING TRUST.**

TO HAVE AND TO HOLD the same to and for the use of the said Grantee, its successors and assigns forever, and the Grantor for his heirs and assigns, hereby covenants and agrees that he will WARRANT SPECIALLY the property hereby conveyed.

IN WITNESS WHEREOF, said Grantor has hereunto set his hand and seal the day and year first above written.

WITNESS:

_William E. George_
William E. George

## ACKNOWLEDGMENT

State of Rhode Island                              )
                                                   )
County of _Providence_                            )

On this the ____/____ day of _April_ ____, 2015, before me, a Notary Public, personally appeared William E. George, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he executed the same in the capacity stated therein and for the purposes contained therein.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

NANCY A. IZZO
Notary Public, State of Rhode Island
My Commission Expires Jan. 20, 2019

I do hereby certify that the precise residence and complete post office address of the within named Grantee is:

82 Austin Avenue
Greenville, RI 02828

*William E. George, Trustee*
*Paula T. George, Trustee*

<u>Grantee or Agent for Grantee</u>

Upon recording, return to:

Tammy L. Ribar, Esquire
Houston Harbaugh, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA  15222-1005

{CLIENT WORK/37335/0000 H1091998:1}

3

REV-183 EX (2-15)

| | | RECORDER'S USE ONLY |
|---|---|---|
| PENNSYLVANIA<br>DEPARTMENT OF REVENUE<br>BUREAU OF INDIVIDUAL TAXES<br>PO BOX 280603<br>HARRISBURG, PA 17128-0603 | **REALTY TRANSFER TAX**<br>**STATEMENT OF VALUE**<br><br>See Reverse for Instructions | State Tax Paid  0<br>Book Number  201509327<br>Page Number<br>Date Recorded  4/2/15 |

Complete each section and file in duplicate with Recorder of Deeds when (1) the full value/consideration is not set forth in the deed, (2) the deed is without consideration or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheets. A Statement of Value (SOV) is not required if the transfer is wholly exempt from tax based on family relationship or public utility easement. However, it is recommended that a SOV accompany all documents filed for recording.

**A.   CORRESPONDENT – All inquiries may be directed to the following person:**

| Name<br>Robert J. Burnett, Esquire | | | Telephone Number:<br>412.281.5060 |
|---|---|---|---|
| Mailing Address<br>Houston Harbaugh, P.C., 401 Liberty Avenue, 22nd Floor | City<br>Pittsburgh | State<br>PA | Zip Code<br>15222 |

**B.   TRANSFER DATA**

Date of Acceptance of Document       /    /

| Grantor(s) / Lessor(s)<br>William E. George | Telephone Number:<br>412.281.5060 | Grantee(s) / Lessee(s)<br>William E. George and Paula T. George, Trustees of the Revocable Living Trust Agreement of William E. George - 2015 | Telephone Number:<br>412.281.5060 |
|---|---|---|---|
| Mailing Address<br>82 Austin Avenue | | Mailing Address<br>82 Austin Avenue | |

| City<br>Greenville | State<br>RI | Zip Code<br>02828 | City<br>Greenville | State<br>RI | Zip Code<br>02828 |
|---|---|---|---|---|---|

**C.   REAL ESTATE LOCATION**

| Street Address<br>N/A, for oil, gas and minerals | City, Township, Borough<br>Smith | |
|---|---|---|
| County<br>Washington | School District<br>Burgettstown Area | Tax Parcel Number<br>570-026-00-00-0015-00 (87.6377 ac.)  and see attached |

**D.   VALUATION DATA**

Was transaction part of an assignment or relocation? ☐ Y  ☒ N

| 1. Actual Cash Consideration<br>$1.00 | 2. Other Consideration<br>+  0 | 3. Total Consideration<br>=  $1.00 |
|---|---|---|
| 4. County Assessed Value<br>$N/A, for oil, gas and minerals | 5. Common Level Ratio Factor<br>x  9.17 | 6. Fair Market Value<br>=  $N/A |

**E.   EXEMPTION DATA – Refer to instructions for exemption status.**

| 1a. Amount of Exemption Claimed<br>100% | 1b. Percentage of Grantor's Interest in Real Estate<br>25% | 1c. Percentage of Grantor's Interest Conveyed<br>100% |
|---|---|---|

**2.   Check Appropriate Box Below for Exemption Claimed**

☐ Will or intestate succession _____
                                                   (Name of Decedent)                              (Estate File Number)

☒ Transfer to a trust.  (Attach complete copy of trust agreement identifying all beneficiaries.)

☐ Transfer from a trust. Date of transfer into the trust _____
   If trust was amended attach a copy of original and amended trust.

☐ Transfer between principal and agent/straw party. (Attach complete copy of agency/straw party agreement.)

☐ Transfers to the commonwealth, the U.S. and instrumentalities by gift, dedication, condemnation or in lieu of condemnation.  (If condemnation or in lieu of condemnation, attach copy of resolution.)

☐ Transfer from mortgagor to a holder of a mortgage in default. (Attach copy of Mortgage and note/Assignment.)

☐ Corrective or confirmatory deed.  (Attach a complete copy of the deed to be corrected or confirmed.)

☐ Statutory corporate consolidation, merger or division. (Attachment copy of articles.)

☐ Other (Please explain exemption claimed, if other than listed above.) _____

Under penalties of law, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

| Signature of Correspondent or Responsible Party | Date<br>1 Apl 2015 |
|---|---|

**FAILURE TO COMPLETE THIS FORM PROPERLY OR ATTACH REQUESTED DOCUMENTATION MAY RESULT IN THE RECORDER'S REFUSAL TO RECORD THE DEED.**

Continuation page of Realty Transfer Tax Statement of Value regarding
Oil, Gas and Mineral Deed Between William E. George and William E. George and Paula T.
George, Trustees of the Revocable Living Trust Agreement of William T. George - 2015

Additional Tax Parcel Numbers:

570-026-00-00-0015-01 (Lot 2- 1.00 ac);
570-026-00-00-0015-02 (Lot 1);
570-026-00-00-0015-03 (Lot 2 2.0 ac.);
570-026-00-00-0015-04 (Lot 5 2.0 ac.);
570-026-00-00-0012-00 (Lot 1.7 ac.);
570-026-00-00-0013-00 (Lot 1.1 ac.);
570-026-00-00-0013-01 (Vacant Lot 1 acre or less); and
570-026-00-00-0014-00 (Lot 2.1 ac.)

# EXHIBIT C

INSTRUMENT NUMBER
201601560
RECORDED ON
Jan 20, 2016
12:20:25 PM
Total Pages: 4
RECORDING FEES          $155.50
TOTAL PAID              $155.50
ID USER: GD

DEBORAH BARDELLA
RECORDER OF DEEDS
WASHINGTON, PA
Pennsylvania



# OIL, GAS AND MINERAL DEED

Made the __8TH__ day of __January__, 2016

BETWEEN    CYNTHIA M. GILLIAM of Portland, Oregon (hereinafter referred to as the "Grantor"),

And

RUTH G. EXLEY of Portland, Oregon (hereinafter referred to as the "Grantee"),

WITNESSETH, that in consideration of One Dollar ($1.00), in hand paid, the receipt whereof is hereby acknowledged, the said Grantor does hereby grant and convey to the said Grantee, Grantor's undivided TWENTY-FIVE PERCENT (25%) interest in and to all of the oil, gas and other minerals underlying the property described below and all of the shale(s) in which such oil, gas(es) or other hydrocarbons may exist or from which such oil, gas(es) or other hydrocarbons may emanate or be produced, including, but not limited to, all oil(s), gas(es) and other hydrocarbons of all natures and descriptions whatsoever and all formations and horizons of all natures or descriptions whatsoever in which such oil(s) or gas(es) may exist or from which such oil(s), gas(es) or other hydrocarbons may emanate or be produced by any technology whether now known or hereafter developed in and under and that may be produced from the following described lands situate in Smith Township, Washington County. Pennsylvania, bounded and described in that certain deed from John W. Keys and Mary Keys, his wife, to Pittsburgh (sic) and Eastern Coal Company, a Corporation or body politic, recorded in Deed Book Volume 290, Page 501.

BEING designated as Parcel ID Nos. 570-026-00-00-0015-00 (87.6377 ac.), 570-026-00-00-0015-01 (Lot 2-1.00 ac.), 570-026-00-00-0015-02 (Lot 1), 570-026-00-00-0015-03 (Lot 2 2.0 ac.), 570-026-00-00-0015-04 (Lot 5 2.0 ac.), 570-026-00-00-0012-00 (Lot 1.7 ac.), 570-026-00-00-0013-00 (Lot 1.1 ac.), 570-026-00-00-0013-01 (Vacant Lot 1 acre or less) and 570-026-00-00-0014-00 (Lot 2.1 ac.).

UNDER AND SUBJECT to all exceptions and reservations of record.

FOR CHAIN OF TITLE, see Affidavit of Heirship recorded as Instrument Number 201509325 on April 2, 2015 in the Recorder of Deeds Office of Washington County.

**THIS TRANSFER IS EXEMPT FROM REALTY TRANSFER TAX PURSUANT TO 72 P.S. §8102-C.3(6) AS IT IS A TRANSFER FROM PARENT TO CHILD.**

[CLIENT WORK\18886\9600\11117.5754 1]

TO HAVE AND TO HOLD the same to and for the use of the said Grantee, her successors and assigns forever, and the Grantor for her heirs and assigns, hereby covenants and agrees that she will WARRANT SPECIALLY the property hereby conveyed.

IN WITNESS WHEREOF, said Grantor has hereunto set her hand and seal the day and year first above written.

WITNESS:

_____

_____
Cynthia M. Gilliam

## ACKNOWLEDGMENT

State of Oregon          )
                                  )
County of Washington    )

On this the __8__ day of __January__, 2016, before me, a Notary Public, personally appeared Cynthia M. Gilliam, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing instrument, and acknowledged that he executed the same in the capacity stated therein and for the purposes contained therein.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

OFFICIAL STAMP
LAURISSA HENRY
NOTARY PUBLIC-OREGON
COMMISSION NO. 929687
MY COMMISSION EXPIRES JULY 07, 2018

_____
Notary Public

Continuation page of Realty Transfer Tax Statement of Value regarding
Oil, Gas and Mineral Deed between Cynthia M. Gilliam, Grantor, and Ruth G. Exley, Grantee

Additional Tax Parcel Numbers:

570-026-00-00-0015-01 (Lot 2- 1.00 ac);
570-026-00-00-0015-02 (Lot 1);
570-026-00-00-0015-03 (Lot 2 2.0 ac.);
570-026-00-00-0015-04 (Lot 5 2.0 ac.);
570-026-00-00-0012-00 (Lot 1.7 ac.);
570-026-00-00-0013-00 (Lot 1.1 ac.);
570-026-00-00-0013-01 (Vacant Lot 1 acre or less); and
570-026-00-00-0014-00 (Lot 2.1 ac.)

I do hereby certify that the precise residence and complete post office address of the within named Grantee is:

3279 NE Dunckley St.
Portland, OR  97212

_____
Grantee or Agent for Grantee

Upon recording, return to:

William J. Blakemore, Esquire
Houston Harbaugh, P.C.
Three Gateway Center
401 Liberty Avenue, 22nd Floor
Pittsburgh, PA  15222-1005

3

# EXHIBIT D

Redacted
BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON    MA  02170-

---

| *Range Resources Corporation and subsidiaries* | Ck. Date: | 9/30/20 | Check No. | 0011161951 |

IF YOU HAVE QUESTIONS CONCERNING YOUR CHECK PLEASE CALL ROYALTY INQUIRY
Line AT 844-594-6775 OR EMAIL ownerrelations@rangeresources.com.

RETAIN FOR YOUR RECORDS.
PLEASE NOTE: IF YOU SHOULD REQUEST A DUPLICATE COPY OF YOUR   PRODUCTION DETAIL
OR A REISSUED CHECK TO BE PROCESSED, THERE WILL BE A $25 CHARGE TO COVER
ADMINISTRATIVE EXPENSE. THE CHARGE WILL BE DEDUCTED FROM YOUR SUBSEQUENT
REVENUE DISTRIBUTION CHECK.



**Range Resources Corporation and subsidiaries**
100 Throckmorton Street, Ste 1200
Fort Worth, Texas 76102
844-594-6775
OwnerRelations@rangeresources.com



| DATE | CHECK NO. | AMOUNT |
|---|---|---|
| 9/30/20 | 0011161951 | $******510.36 |

PAY    *FIVE HUNDRED TEN AND 36 / 100 DOLLARS*

TO THE
ORDER
OF

Redacted
BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON    MA  02170-

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH        TX   76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON          MA   02170-

OWNER NUMBER:
CHECK NUMBER:    [Redacted] 161951
CHECK DATE.:     09/30/2020
PAGE NUMBER.:    1 OF 15

| PROPERTY# | INT | PC | IOI | PROPERTY NAME | SALES VOLUMES | | | PRICE | | | DC RATE | | STATE | COUNTY | GROSS VALUE | SALES VALUES | | | NET VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PROD DATE | | | MCF/BBL | MMBTU | BTU | MCF/BBL | PRICE | MMBTU | MCF/BBL | MMBTU | | | STATE | COUNTY | GROSS VALUE | TAXES | DEDUCTIONS | DC | NET VALUE |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | | 21.530 | | | | | PENNSYLVANIA | WASHINGTON | | | 298.02- PHI | | .05 |
| 04/2018 | | | | | | | | | | | | | | | | | | .03- | |
| OWNER: .00018175 | | | | | | | | | | | | | | | | | | | |
| TOTALS | | | .00 | | | | | | | | | | | | | | | | .05 |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | | 23.702 | | | | | PENNSYLVANIA | WASHINGTON | | | 557.74- PHI | | .11 |
| 05/2018 | | | | | | | | | | | | | | | | | | .11- | |
| OWNER: .00018175 | | | | | | | | | | | | | | | | | | | |
| TOTALS | | | .00 | | | | | | | | | | | | | | | | .11 |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | | 25.330 | | | | | PENNSYLVANIA | WASHINGTON | | | 303.27- PHI | | .04 |
| 06/2018 | | | | | | | | | | | | | | | | | | .04- | |
| OWNER: .00018175 | | | | | | | | | | | | | | | | | | | |
| TOTALS | | | .00 | | | | | | | | | | | | | | | | .04 |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | | 26.944 | | | | | PENNSYLVANIA | WASHINGTON | | | 682.79- PHI | | .12 |
| 07/2018 | | | | | | | | | | | | | | | | | | .12- | |
| OWNER: .00018175 | | | | | | | | | | | | | | | | | | | |
| TOTALS | | | .00 | | | | | | | | | | | | | | | | .12 |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | | 26.171 | | | | | PENNSYLVANIA | WASHINGTON | | | 603.80- PHI | | .11 |
| 08/2018 | | | | | | | | | | | | | | | | | | .11- | |
| OWNER: .00018175 | | | | | | | | | | | | | | | | | | | |
| TOTALS | | | .00 | | | | | | | | | | | | | | | | .11 |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | | 30.319 | | | | | PENNSYLVANIA | WASHINGTON | | | 538.00- PHI | | .10 |
| 09/2018 | | | | | | | | | | | | | | | | | | .10- | |
| OWNER: .00018175 | | | | | | | | | | | | | | | | | | | |
| TOTALS | | | .00 | | | | | | | | | | | | | | | | .10 |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX  76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON              MA   02170-

OWNER NUMBER:      161951
CHECK NUMBER:
CHECK DATE.:   09/30/2020
PAGE NUMBER.:  2 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | | STATE | | | COUNTY | | | SALES VALUES | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | SALES VOLUMES | | | | DC RATE | | | | | | | | | |
| PROD DATE | MCF/BBL | MMBTU | BTU | MMBTU | PRICE MCF/BBL | MMBTU | MCF/BBL | MMBTU | GROSS VALUE | TAXES | DEDUCTIONS | DC | NET VALUE | | | | |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | PENNSYLVANIA | | WASHINGTON | | | | | | | | |
| OWNER#: .00018175 | | | | | 29.066 | | | | | | 462.38- PHI | | .09 | | | | |
| TOTALS | | .00 | | | | | | | | | .09- | | .09 | | | | |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | PENNSYLVANIA | | WASHINGTON | | | | | | | | |
| OWNER#: .00018175 | | | | | 22.444 | | | | | | 218.54- PHI | | .03 | | | | |
| TOTALS | | .00 | | | | | | | | | .03- | | .03 | | | | |
| 410160008 | 2 | 3 | R5 | MOCEK JOHN 11222 4H | | | PENNSYLVANIA | | WASHINGTON | | | | | | | | |
| OWNER#: .00018175 | | | | | 21.297 | | | | | | 217.70- PHI | | .04 | | | | |
| TOTALS | | .00 | | | | | | | | | .04- | | .04 | | | | |
| 410160008 | 2 | 3 R5 | 39,081.58 | MOCEK JOHN 11222 4H 41,660.96 | 1.284 | 1.205 | .298 | .280 | WASHINGTON 50,211.24 | | 11,671.77 FCI | | | | | | |
| OWNER#: .00018175 | | 7.10 | | 7.56 | | | | | 9.13 | | 2.12 | | 7.01 | | | | |
| OWNER#: .00018175 | | | | | | | .808 | .758 | | | 31,594.27 GAI | | 5.74- | | | | |
| OWNER#: .00018175 | | | | | | | .024 | .022 | | | 5.74 PFC | | .17- | | | | |
| OWNER#: 1.00000000 | | | | | | | .278 | .261 | | | 950.01 PFC | | 1.98 | | | | |
| | | | | | | | | | | | .17 | | | | | | |
| | | | | | | | | | | | 1.98- RRO | | | | | | |
| | | | | | | | | | | | 1.98- | | | | | | |
| TOTALS | | 7.10 | | 7.56 | | | | | | | 3.18 | | 3.18 | | | | |
| 410160008 | 2 | 3 R5 | 6,505.37 | MOCEK JOHN 11222 4H | 16.043 | 10.130 | | | WASHINGTON 104,369.27 | | 65,903.20 PHI | | 6.98 | | | | |
| OWNER#: .00018175 | | 1.18 | | | | | | | 18.97 | | 11.99 | | 6.98 | | | | |
| TOTALS | | 1.18 | | | | | | | | | 6.98 | | | | | | |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX    76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON        MA    02170-

OWNER NUMBER:    [Redacted] 61951
CHECK NUMBER:
CHECK DATE.:     09/30/2020
PAGE NUMBER.:    3 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | COUNTY | STATE | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| PROD DATE | MCF/BBL | BTU | MMBTU | PRICE MCF/BBL | MMBTU | DC RATE MCF/BBL | GROSS VALUE | TAXES | DEDUCTIONS DC | NET VALUE |
| **410160008** | 2 | 5 | R5 | MOCEK JOHN 11222 4H | | WASHINGTON | PENNSYLVANIA | | | |
| OWNER#: .00018175 | | | | | | | | | | |
| 07/2020 | 583.94 | | | 23.176 | | | 13,533.40 | | | 2.45 |
| | .11 | | | | | | 2.45 | | | |
| TOTALS | .11 | | | | | | | | | 2.45 |
| **410160008** | | | | MOCEK JOHN 11222 4H | | WASHINGTON | PENNSYLVANIA | | | |
| OWNER#: 1.00000000 | | | | | | | | | | |
| 09/2020 | | | | | | | | | .41 PWH | .41- |
| | | | | | | | | | .41 | |
| TOTALS | .00 | | | | | | | | | .41- |
| **410160601** | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | WASHINGTON | PENNSYLVANIA | | | |
| OWNER#: .00192818 | | | | | | | | | | |
| 04/2018 | | | | 22.301 | | | | | 19.63- PHI | .04- |
| | | | | | | | | | .04- | |
| TOTALS | .00 | | | | | | | | | .04 |
| **410160601** | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | WASHINGTON | PENNSYLVANIA | | | |
| OWNER#: .00192818 | | | | | | | | | | |
| 05/2018 | | | | 24.577 | | | | | 95.90- PHI | .18- |
| | | | | | | | | | .18- | |
| TOTALS | .00 | | | | | | | | | .18 |
| **410160601** | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | WASHINGTON | PENNSYLVANIA | | | |
| OWNER#: .00192818 | | | | | | | | | | |
| 06/2018 | | | | 26.152 | | | | | 65.53- PHI | .13- |
| | | | | | | | | | .13- | |
| TOTALS | .00 | | | | | | | | | .13 |
| **410160601** | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | WASHINGTON | PENNSYLVANIA | | | |
| OWNER#: .00192818 | | | | | | | | | | |
| 07/2018 | | | | 27.800 | | | | | 127.30- PHI | .25- |
| | | | | | | | | | .25- | |
| TOTALS | .00 | | | | | | | | | .25 |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX   76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON          MA   02170-

OWNER NUMBER: 61951
CHECK NUMBER:
CHECK DATE.: 09/30/2020
PAGE NUMBER.: 4 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | | | | STATE | | COUNTY | | | | SALES VALUES | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | SALES VOLUMES | | PRICE | | | DC RATE- | | | | | | DEDUCTIONS | DC | NET VALUE |
| PROD DATE | | MCF/BBL | | BTU | HHBTU | MCF/BBL | MMBTU | MCF/BBL | MMBTU | GROSS VALUE | TAXES | | | | | | | |
| 410160601 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | | | | PENNSYLVANIA | | WASHINGTON | | | | | | | |
| 08/2018 | | | | | | 26.705 | | | | | | | 87.99-PHI | | .16 |
| OWNER#: | .00192818 | | | | | | | | | | | | .16- | | .16 |
| TOTALS | | .00 | | | | | | | | | | | | | .16 |
| 410160601 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | | | | PENNSYLVANIA | | WASHINGTON | | | | | | | |
| 10/2018 | | | | | | 29.696 | | | | | | | 126.91-PHI | | .25 |
| OWNER#: | .00192818 | | | | | | | | | | | | .25- | | .25 |
| TOTALS | | .00 | | | | | | | | | | | | | .25 |
| 410160601 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | | | | PENNSYLVANIA | | WASHINGTON | | | | | | | |
| 11/2018 | | | | | | 22.871 | | | | | | | 66.94-PHI | | .12 |
| OWNER#: | .00192818 | | | | | | | | | | | | .12- | | .12 |
| TOTALS | | .00 | | | | | | | | | | | | | .12 |
| 410160601 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | | | | PENNSYLVANIA | | WASHINGTON | | | | | | | |
| 12/2018 | | | | | | 21.669 | | | | | | | 60.41-PHI | | .12 |
| OWNER#: | .00192818 | | | | | | | | | | | | .12- | | .12 |
| TOTALS | | .00 | | | | | | | | | | | | | .12 |
| 410160601 | 2 | 2 | R4 | CAMPBELL JACOB UNIT 1H | | | | | PENNSYLVANIA | | WASHINGTON | | | | | | | |
| 07/2020 | | 12,487.01 | | 1066 | 13,311.15 | 1.284 | 1.205 | .298 | .280 | 16,043.06 | | | 3,729.26 FCI | | |
| OWNER#: | .00192818 | 24.08 | | | 25.66 | | | | | 30.93 | | | 7.19 | | 23.74 |
| OWNER#: | .00192818 | | | | | | | .808 | .758 | | | | 10,094.73 GAI | | 19.47- |
| OWNER#: | .00192818 | | | | | | | .024 | .022 | | | | 19.47 | | |
| OWNER#: | .00192818 | | | | | | | | | | | | 303.54 PFC | | .59- |
| | | | | | | | | | | | | | .59 | | |
| TOTALS | | 24.08 | | | 25.66 | | | | | | | | | | 3.60 |
| 410160601 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 1H | | | | | PENNSYLVANIA | | WASHINGTON | | | | | | | |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH     TX  76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON     MA  02170-

OWNER NUMBER:    11161951
CHECK NUMBER:
CHECK DATE.:     09/30/2020
PAGE NUMBER.:    5 OF 15

Redacted

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | STATE | COUNTY | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | SALES VALUES | | |
| PROD DATE | MCF/BBL | BTU | HHBTU | PRICE MCF/BBL | MMBTU | MCF/BBL | MMBTU | GROSS VALUE | TAXES | DEDUCTIONS | DC | NET VALUE |

| PROPERTY# / PROD DATE | INT / MCF/BBL | PC | DOI | PROPERTY NAME | STATE | COUNTY / GROSS VALUE | DEDUCTIONS DC | NET VALUE |
|---|---|---|---|---|---|---|---|---|
| 410160601 | 2 | 3 R4 | | CAMPBELL JACOB UNIT 1H | PENNSYLVANIA | WASHINGTON | | |
| 07/2020 | 2,070.06 | | | 16.192 | 10.131 | 13,519.49 | 21,076.26 PHI | 23.99 |
| | | | | | | 64.63 | 40.64 | |
| ONWER#: .00192818 | 3.99 | | | | | | | |
| TOTALS | 3.99 | | | | | | | 23.99 |
| 410160601 | 2 | 5 R4 | | CAMPBELL JACOB UNIT 1H | PENNSYLVANIA | WASHINGTON | | |
| 07/2020 | 205.47 | | | 30.647 | | 6,297.07 | | 12.14 |
| | | | | | | 12.14 | | |
| ONWER#: .00192818 | .39 | | | | | | | |
| TOTALS | .39 | | | | | | | 12.14 |
| 410160601 | 2 | | | CAMPBELL JACOB UNIT 1H | PENNSYLVANIA | WASHINGTON | | |
| 09/2020 | 1.00000000 | | | | | | 1.26 PWR | 1.26 |
| ONWER#: | | | | | | | 1.26 | |
| TOTALS | .00 | | | | | | | 1.26 |
| 410160603 | 2 | 3 R4 | | CAMPBELL JACOB UNIT 3H | PENNSYLVANIA | WASHINGTON | | |
| 04/2018 | | | | 22.557 | | | 21.13- PHI | .04 |
| ONWER#: .00192818 | .00 | | | | | | .04- | |
| TOTALS | .00 | | | | | | | .04 |
| 410160603 | 2 | 3 R4 | | CAMPBELL JACOB UNIT 3H | PENNSYLVANIA | WASHINGTON | | |
| 05/2020 | | | | 24.909 | | | 80.27- PHI | .15 |
| ONWER#: .00192818 | .00 | | | | | | .15- | |
| TOTALS | .00 | | | | | | | .15 |
| 410160603 | 2 | 3 R4 | | CAMPBELL JACOB UNIT 3H | PENNSYLVANIA | WASHINGTON | | |
| 06/2018 | | | | 26.477 | | | 55.82- PHI | .10 |
| ONWER#: .00192818 | .00 | | | | | | .10- | |
| TOTALS | .00 | | | | | | | .10 |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX   76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON    MA   02170-

OWNER NUMBER:   [Redacted] 161951
CHECK NUMBER:
CHECK DATE:    09/30/2020
PAGE NUMBER.:  6 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | STATE | COUNTY | SALES VALUES | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PROD DATE | MCF/BBL | BTU | MHBTU | PRICE MCF/BBL | MMBTU | MCF/BBL DC RATE | MMBTU | GROSS VALUE | TAXES | DEDUCTIONS DC | NET VALUE |
| 410160603 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 3H | | PENNSYLVANIA | WASHINGTON | | | 106.04- PHI | .20 |
| OWNER: .00192818 | | | | | | | | | | .20- | |
| TOTALS | | .00 | | 28.155 | | | | | | | .20 |
| 410160603 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 3H | | PENNSYLVANIA | WASHINGTON | | | 71.99- PHI | .14 |
| OWNER: .00192818 | | | | | | | | | | .14- | |
| TOTALS | | .00 | | 26.993 | | | | | | | .14 |
| 410160603 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 3H | | PENNSYLVANIA | WASHINGTON | | | 104.20- PHI | .20 |
| OWNER: .00192818 | | | | | | | | | | .20- | |
| TOTALS | | .00 | | 30.034 | | | | | | | .20 |
| 410160603 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 3H | | PENNSYLVANIA | WASHINGTON | | | 59.56- PHI | .12 |
| OWNER: .00192818 | | | | | | | | | | .12- | |
| TOTALS | | .00 | | 23.110 | | | | | | | .12 |
| 410160603 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 3H | | PENNSYLVANIA | WASHINGTON | | | 62.94- PHI | .12 |
| OWNER: .00192818 | | | | | | | | | | .12- | |
| TOTALS | | .00 | | 21.884 | | | | | | | .12 |
| 410160603 | 2 | R4 | | CAMPBELL JACOB UNIT 3H | | PENNSYLVANIA | WASHINGTON | 10,749.17 | | 2,498.68 FCI | 15.91 |
| 07/2020 | 8,366.55 | 1046 | 8,918.74 | 1.284 | 1.205 | .296 | .280 | 20.73 | 4.82 | | |
| OWNER: .00192818 | 16.13 | | 17.19 | | .808 | | .758 | | | 6,763.66 GAI | |
| | | | | | | | | | | 13.04 | 13.04- |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX  76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON    MA  02170-

OWNER NUMBER:  11161951
CHECK NUMBER:
CHECK DATE.:   09/30/2020
PAGE NUMBER.:  7 OF 15

Reduced

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | STATE | COUNTY | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PROD DATE | | | | | | DC RATE | | | | | | SALES VALUES | | |
| | NCF/BBL | BTU | MMBTU | MCF/BBL | PRICE MCF/BBL | MMBTU | MCF/BBL | MMBTU | GROSS VALUE | TAXES | DEDUCTIONS | DC | NET VALUE | |

**410160603**   INT 2   R4   CAMPBELL JACOB UNIT 3H   PENNSYLVANIA   WASHINGTON
.024 / .022

OWNER#: .00192818    16.13 / 16.13    17.19 / 17.19    20.73    203.38 PFC    .39 / .39

TOTALS    2.48    2.48

**410160603**   07/2020   2   R4   CAMPBELL JACOB UNIT 3H   PENNSYLVANIA   WASHINGTON
10.158

OWNER#: .00192818    1,436.77 / 2.77    16.100    23,132.07 / 44.60    14,595.07 PHI / 28.13    16.47 / 16.47

TOTALS    2.77

**410160603**   07/2020   5   R4   CAMPBELL JACOB UNIT 3H   PENNSYLVANIA   WASHINGTON

OWNER#: .00192818    230.30 / .44    30.646    7,057.77 / 13.61    13.61 / 13.61

TOTALS    .44

**410160603**   09/2020   2   CAMPBELL JACOB UNIT 3H   PENNSYLVANIA   WASHINGTON

OWNER#: 1.00000000    1.03 PWR    1.03 / 1.03

TOTALS    .00    1.03

**410160604**   09/2018   2   R3   CAMPBELL JACOB UNIT 4H   PENNSYLVANIA   WASHINGTON

OWNER#: .00097186    29.412    336.65 PHI / .32-    .22 / .22

TOTALS    .00

**410160604**   10/2018   2   R3   CAMPBELL JACOB UNIT 4H   PENNSYLVANIA   WASHINGTON

OWNER#: .00097186    28.165    1,399.74 PHI / 1.36-    1.36 / 1.36

TOTALS    .00

Reland

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX  76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON    MA  02170-

OWNER NUMBER:
CHECK NUMBER:    11161951
CHECK DATE.:     09/30/2020
PAGE NUMBER.:    8 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | | | | | PRICE | | | STATE | | | COUNTY | | SALES VALUES | | | | | NET VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | SALES VOLUMES | | | | | | | | | DC RATE- | | | | GROSS VALUE | TAXES | DEDUCTIONS | DC | | |
| PROD DATE | | | MCF/BBL | | BTU | MMBTU | MHBTU | | PRICE MCF/BBL | | MMBTU | MCF/BBL | | MMBTU | | | | | | | | |
| 410160604 | 2 | 3 | R3 | CAMPBELL JACOB UNIT 4H | | | | PENNSYLVANIA | | | | PENNSYLVANIA | | | WASHINGTON | | | | | | | |
| OWNER#: 11/2018   .00097186 | | | | | | | | | 21.896 | | | | | | | | | 578.87- PHI | .57- | | .57 |
| TOTALS | | | .00 | | | | | | | | | | | | | | | | | | | .57 |
| 410160604 | 2 | 3 | R3 | CAMPBELL JACOB UNIT 4H | | | | PENNSYLVANIA | | | | PENNSYLVANIA | | | WASHINGTON | | | | | | | |
| OWNER#: 12/2018   .00097186 | | | | | | | | | 20.867 | | | | | | | | | 439.25- PHI | .43- | | .43 |
| TOTALS | | | .00 | | | | | | | | | | | | | | | | | | | .43 |
| 410160604 | 2 | 2 | R3 | CAMPBELL JACOB UNIT 4H | | | | PENNSYLVANIA | | | | PENNSYLVANIA | | | WASHINGTON | | | | | | | |
| OWNER#: 07/2020   .00097186 | 51,424.61 49.98 | 1066 | | | 54,818.63 53.27 | | | 1.284 | | 1.205 | .299 | .808 | | .280 | | 66,069.32 64.21 | | 15,358.03 FCI   14.92 | | | 49.29 |
| OWNER#:   .00097186 | | | | | | | | | | | | | .808 | | .758 | | | 41,572.61 GAI   40.40 | | | | 40.40- |
| OWNER#:   .00097186 | | | | | | | | | | | | | .024 | | .022 | | | 1,250.04 PFC   1.21 | | | | 1.21- |
| OWNER#: 1.00000000 | | | | | | | | | | | | | .278 | | .261 | | | 13.91- R80   13.91- | | | | 13.91 |
| TOTALS | | | 49.98 | | | 53.27 | | | | | | | | | | | | | | | | 21.59 |
| 410160604 | 2 | 3 | R3 | CAMPBELL JACOB UNIT 4H | | | | PENNSYLVANIA | | | | PENNSYLVANIA | | | WASHINGTON | | | | | | | |
| OWNER#: 07/2020   .00097186 | 7,497.44 7.23 | | | | | | | | 15.991 | | | | 10.112 | | | | | 118,933.17 115.59 | | 75,212.97 PHI   73.11 | | 42.48 |
| TOTALS | | | 7.23 | | | | | | | | | | | | | | | | | | | 42.48 |
| 410160604 | 2 | 5 | R3 | CAMPBELL JACOB UNIT 4H | | | | PENNSYLVANIA | | | | PENNSYLVANIA | | | WASHINGTON | | | | | | | |
| OWNER#: 07/2020   .00097186 | 460.50 .45 | | | | | | | | 30.646 | | | | | | | | | 14,112.66 13.72 | | | | 13.72 |
| TOTALS | | | .45 | | | | | | | | | | | | | | | | | | | 13.72 |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX  76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON    MA  02170-

OWNER NUMBER:   Redacted
CHECK NUMBER:   1,961,951
CHECK DATE.:    09/30/2020
PAGE NUMBER.:   9 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | STATE | COUNTY | | | SALES VALUES | | | | NET VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PROD DATE | MCF/BBL | BTU | MMBTU | MHBTU | PRICE MCF/BBL | MHBTU | DC RATE MCF/BBL | MHBTU | GROSS VALUE | TAXES | DEDUCTIONS | DC | NET VALUE |
| 410160604 | | | | CAMPBELL JACOB UNIT 4H | PENNSYLVANIA | WASHINGTON | | | | | | | |
| OWNER: 1.00000000  09/2020 | | | | | | | | | | | 2.47 | FNH | 2.47- |
| TOTALS | .00 | | | | | | | | | | 2.47 | | 2.47- |
| 410160605 | | | | CAMPBELL JACOB UNIT 5H | PENNSYLVANIA | WASHINGTON | | | | | | | |
| OWNER: .00048171  08/2018 | 2 | 3 | R4 | 26.130 | | | | | | | 462.19- | PHI .22- | .22- |
| TOTALS | .00 | | | | | | | | | | .22- | | .22- |
| 410160605 | | | | CAMPBELL JACOB UNIT 5H | PENNSYLVANIA | WASHINGTON | | | | | | | |
| OWNER: .00048171  09/2018 | 2 | 3 | R4 | 30.343 | | | | | | | 3,075.64- | PHI 1.47- | 1.47- |
| TOTALS | .00 | | | | | | | | | | 1.47- | | 1.47- |
| 410160605 | | | | CAMPBELL JACOB UNIT 5H | PENNSYLVANIA | WASHINGTON | | | | | | | |
| OWNER: .00048171  10/2018 | 2 | 3 | R4 | 29.060 | | | | | | | 1,648.42- | PHI .79- | .79- |
| TOTALS | .00 | | | | | | | | | | .79- | | .79- |
| 410160605 | | | | CAMPBELL JACOB UNIT 5H | PENNSYLVANIA | WASHINGTON | | | | | | | |
| OWNER: .00048171  11/2018 | 2 | 3 | R4 | 22.485 | | | | | | | 1,070.60- | PHI .51- | .51- |
| TOTALS | .00 | | | | | | | | | | .51- | | .51- |
| 410160605 | | | | CAMPBELL JACOB UNIT 5H | PENNSYLVANIA | WASHINGTON | | | | | | | |
| OWNER: .00048171  12/2018 | 2 | 3 | R4 | 21.368 | | | | | | | 484.74- | PHI .24- | .24- |
| TOTALS | .00 | | | | | | | | | | .24- | | .24- |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH     TX  76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON          MA  02170-

OWNER NUMBER:   116.61951
CHECK NUMBER:
CHECK DATE..:  09/30/2020
PAGE NUMBER.:  10 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | STATE | | COUNTY | | | | | | | NET VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | DC RATE------ | | | | SALES VALUES | | | | |
| | | SALES VOLUMES | | | PRICE | | | | | | | | | | |
| PROD DATE | MCF/BBL | BTU | MMBTU | MCF/BBL | MMBTU | MCF/BBL | MMBTU | GROSS VALUE | TAXES | DEDUCTIONS | DC | | | | |

**410160605**   CAMPBELL JACOB UNIT 5H
07/2020   2   R4   1066   PENNSYLVANIA   WASHINGTON
OWNER1: .00048171   134,462.05   143,762.94   1.284   .290   .280   173,260.08   40,276.73  FCI
                      64.97         69.25                        83.47          19.40          64.07
OWNER1: .00048171                                  .808   .750   109,024.97  GAI   52.52-
                                                                              52.52
OWNER1: .00048171                                  .024   .022   3,278.26  PPC   1.58-
                                                                              1.58
OWNER1: 1.00000000                                 .270   .261   18.10-800   18.10
                                                                 18.10-
TOTALS                64.97         69.25                                                      28.07

**410160605**   CAMPBELL JACOB UNIT 5H
07/2020   3   R4   PENNSYLVANIA   WASHINGTON
OWNER1: .00048171   21,749.23   16.041   10.128   308,809.76   220,281.98  PHI   61.95
                      10.48                        160.07       106.12
TOTALS                10.48                                                                    61.95

**410160605**   CAMPBELL JACOB UNIT 5H
07/2020   5   R4   PENNSYLVANIA   WASHINGTON
OWNER1: .00048171   1,073.72   30.645   32,905.15   15.85
                      .52                  15.85
TOTALS                .52                                                                      15.85

**410160605**   CAMPBELL JACOB UNIT 5H
09/2020   2   PENNSYLVANIA   WASHINGTON
OWNER1: 1.00000000   .00   3.35  PHH   3.35-
                              3.35
TOTALS                .00                                                                      3.35-

**410160609**   CAMPBELL JACOB UNIT 6H
09/2018   3   R2   29.862   PENNSYLVANIA   WASHINGTON
OWNER1: .00085286   .00   793.46-  PHI   .67
                              .67-
TOTALS                .00                                                                      .67

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH     TX   76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON          MA   02170-

OWNER NUMBER:     1161951
CHECK NUMBER:     Redacted
CHECK DATE..:     09/30/2020
PAGE NUMBER.:     11 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | STATE | | | | COUNTY | | SALES VALUES | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PROD DATE | | | | | PRICE | | DC RATE | | | | | | | | NET VALUE |
| | | | SALES VOLUMES | | | | | | | | | | | | |
| | MCF/BBL | | | BTU | MMBTU | MCF/BBL | HMBTU | MCF/BBL | MMBTU | GROSS VALUE | TAXES | DEDUCTIONS | DC | | |
| 410160609 | 2 | 3 | R2 | CAMPBELL JACOB UNIT 6H | | PENNSYLVANIA | | | WASHINGTON | | | | | | |
| 10/2018 | | | | | 28.603 | | | | | | | | | | |
| OWNER: .00085286 | | | | | | | | | | | 1,432.44- PHI | | 1.22 | |
| | | | | | | | | | | | | 1.22- | | 1.22 |
| TOTALS | .00 | | | | | | | | | | | | | |
| 410160609 | 2 | 3 | R2 | CAMPBELL JACOB UNIT 6H | | PENNSYLVANIA | | | WASHINGTON | | | | | | |
| 11/2018 | | | | | 22.178 | | | | | | | | | | |
| OWNER: .00085286 | | | | | | | | | | | 715.50- PHI | | .61 | |
| | | | | | | | | | | | | .61- | | .61 |
| TOTALS | .00 | | | | | | | | | | | | | |
| 410160609 | 2 | 3 | R2 | CAMPBELL JACOB UNIT 6H | | PENNSYLVANIA | | | WASHINGTON | | | | | | |
| 12/2018 | | | | | 21.104 | | | | | | | | | | |
| OWNER: .00085286 | | | | | | | | | | | 258.80- PHI | | .21 | |
| | | | | | | | | | | | | .21- | | .21 |
| TOTALS | .00 | | | | | | | | | | | | | |
| 410160609 | 2 | 2 | R2 | CAMPBELL JACOB UNIT 6H | | PENNSYLVANIA | | | WASHINGTON | | | | | | |
| 07/2020 | 67,918.06 | | | 1066 | 72,400.65 | 1,284 | 1,205 | .280 | | 87,259.77 | | 20,283.82 FCI | | 57.12 | |
| OWNER: .00085286 | 57.92 | | | | 61.74 | | | | | | 74.42 | 17.30 | | | |
| OWNER: .00085286 | | | | | | | .808 | .758 | | | | 54,906.20 GAI | | 46.83 | |
| OWNER: .00085286 | | | | | | | .024 | .022 | | | | 46.83 | | | |
| OWNER: .00085286 | | | | | | | | | | | | 1,650.97 PFC | | 1.40 | |
| OWNER: 1.00000000 | | | | | | | .278 | .261 | | | | 1.40 | | | |
| | | | | | | | | | | | | 16.14- R80 | | 16.14 | |
| | | | | | | | | | | | | 16.14- | | 16.14 | |
| TOTALS | 57.92 | | | | 61.74 | | | | | | | | | 25.03 | |
| 410160609 | 2 | 3 | R2 | CAMPBELL JACOB UNIT 6H | | PENNSYLVANIA | | | WASHINGTON | | | | | | |
| 07/2020 | 10,701.97 | | | | | 16.107 | 10.154 | | | 172,474.62 | | 108,736.58 PHI | | 54.37 | |
| OWNER: .00085286 | 9.13 | | | | | | | | | 147.10 | | 92.73 | | | |
| TOTALS | 9.13 | | | | | | | | | | | | | 54.37 | |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX   76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON                MA   02170-

OWNER NUMBER:       1161951
CHECK NUMBER:
CHECK DATE.  .:     09/30/2020
PAGE NUMBER..:      12 OF 15

Related

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | | STATE | | | COUNTY | | SALES VALUES | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | SALES VOLUMES | | | PRICE | | DC DATE: | | | | | | | |
| PROD DATE | MCF/BBL | | BTU | MMBTU | MCF/BBL | MHBTU | MCF/BBL | MCF/BBL | MMBTU | GROSS VALUE | TAXES | DEDUCTIONS | DC | NET VALUE |
| 410160609 | 2 | 5 | R2 | CAMPBELL JACOB UNIT 6H | | | PENNSYLVANIA | | | WASHINGTON | | | | | |
| 07/2020 | .00082286 | 1,130.71 | | | 30.645 | | | | | 34,651.56 | | | | | 29.56 |
| OWNER#: | | .97 | | | | | | | | 29.56 | | | | | 29.56 |
| TOTALS | | .97 | | | | | | | | | | | | | |
| 410160609 | 2 | | | CAMPBELL JACOB UNIT 6H | | | PENNSYLVANIA | | | WASHINGTON | | | | | |
| 09/2020 | 1.00000000 | | | | | | | | | | | | 3.43 PHH | | 3.43- |
| OWNER#: | | | | | | | | | | | | | 3.43 | | 3.43- |
| TOTALS | | .00 | | | | | | | | | | | | | |
| 410160610 | 2 | 3 | R2 | CAMPBELL JACOB UNIT 7H | | | PENNSYLVANIA | | | WASHINGTON | | | | | |
| 09/2018 | .00043539 | | | | 30.518 | | | | | | | | 1,007.84- PHI | | .43 |
| OWNER#: | | | | | | | | | | | | | .43- | | .43 |
| TOTALS | | .00 | | | | | | | | | | | | | |
| 410160610 | 2 | 3 | R2 | CAMPBELL JACOB UNIT 7H | | | PENNSYLVANIA | | | WASHINGTON | | | | | |
| 10/2018 | .00043539 | | | | 29.234 | | | | | | | | 1,193.83- PHI | | .53 |
| OWNER#: | | | | | | | | | | | | | .53- | | .53 |
| TOTALS | | .00 | | | | | | | | | | | | | |
| 410160610 | 2 | 3 | R2 | CAMPBELL JACOB UNIT 7H | | | PENNSYLVANIA | | | WASHINGTON | | | | | |
| 11/2018 | .00043539 | | | | 22.603 | | | | | | | | 574.19- PHI | | .25 |
| OWNER#: | | | | | | | | | | | | | .25- | | .25 |
| TOTALS | | .00 | | | | | | | | | | | | | |
| 410160610 | 2 | 3 | R2 | CAMPBELL JACOB UNIT 7H | | | PENNSYLVANIA | | | WASHINGTON | | | | | |
| 12/2018 | .00043539 | | | | 21.473 | | | | | | | | 410.23- PHI | | .17 |
| OWNER#: | | | | | | | | | | | | | .17- | | .17 |
| TOTALS | | .00 | | | | | | | | | | | | | |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX   76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON          MA   02170-

OWNER NUMBER: Redacted 161951
CHECK NUMBER:
CHECK DATE.: 09/30/2020
PAGE NUMBER.: 13 OF 15

| PROPERTY# | INT | PC | IOI | PROPERTY NAME | | | | | STATE | | | COUNTY | | | | SALES VALUES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | SALES VOLUMES | | | | | | DC RATE | | | | | | | | DEDUCTIONS | NET VALUE |
| PROD DATE | | MCF/BBL | MMBTU | BTU | MMBTU | PRICE MCF/BBL | MMBTU | MCF/BBL DC RATE | MMBTU | GROSS VALUE | TAXES | | | | | | DC | |

**410160610**  2  INT 2
| PROD DATE | | | | PROPERTY NAME | | | | | STATE | | | COUNTY | | | | | DEDUCTIONS | NET VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

410160610   2   R2   CAMPBELL JACOB UNIT 7H   PENNSYLVANIA   WASHINGTON
07/2020   2   43,258.09   46,113.12   1066   1.284   1.205   .298   .280   35,577.14   12,919.09   FCI   18.58
                18.83       20.07                                            5.62
OWNER#: .00043539                                  .808   .758         24.20   34,970.63   GAI   15.23-
OWNER#: .00043539                                  .024   .022               15.23   1,051.53   FTC   .46-
OWNER#: .00043539                                  .278   .261                      .46
OWNER#: 1.00000000                                                             5.25-R80   5.25
                                                                               5.25-PHI
TOTALS        18.83       20.07                                                             6.14

410160610   3   R2   CAMPBELL JACOB UNIT 7H   PENNSYLVANIA   WASHINGTON
07/2020   3   6,515.40                     16.069   10.149                  104,702.09   66,125.32   PHI   16.79
                2.83                                                  45.59            28.80
OWNER#: .00043539
TOTALS        2.83                                                                          16.79

410160610   5   R2   CAMPBELL JACOB UNIT 7H   PENNSYLVANIA   WASHINGTON
07/2020   5   645.03                     30.645                              19,767.55               8.61
                .28                                                    8.61
OWNER#: .00043539
TOTALS        .28                                                                           8.61

410160610   2   CAMPBELL JACOB UNIT 7H   PENNSYLVANIA   WASHINGTON
09/2020                                                                                  1.07   PWR   1.07-
OWNER#: 1.00000000                                                                        1.07
TOTALS        .00                                                                           1.07-

410160611   3   R4   CAMPBELL JACOB UNIT 10H   PENNSYLVANIA   WASHINGTON
08/2018   3        26.543                                                    458.03-   458.03-   PHI   .23
OWNER#: .00048171                                                                        .23-

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH     TX   76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON     MA   02170-

OWNER NUMBER:  11161951
CHECK NUMBER:
CHECK DATE.:   09/30/2020
PAGE NUMBER.:  14 OF 15

Released

| PROPERTY# PROD DATE | INT MCF/BBL | PC BTU | DOI | PROPERTY NAME MMBTU | PRICE MCF/BBL | MMBTU | DC RATE MCF/BBL | MMBTU | STATE / GROSS VALUE | COUNTY / TAXES | SALES VALUES DEDUCTIONS | DC | NET VALUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTALS | .00 | | | | | | | | | | | | .23 |
| 410160611  09/2018 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 10H | 30.833 | | | | PENNSYLVANIA   WASHINGTON | | | | |
| OWNER#:  .00048171 | 132,425.91 | 63.79 | | | | | | | | | 3,182.04- PHI | | 1.53 |
| TOTALS | .00 | | | | | | | | | | 1.53- | | 1.53 |
| 410160611  10/2018 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 10H | 29.532 | | | | PENNSYLVANIA   WASHINGTON | | | | |
| OWNER#:  .00048171 | | | | | | | | | | | 1,673.42- PHI | | .80 |
| TOTALS | .00 | | | | | | | | | | .80- | | .80 |
| 410160611  11/2018 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 10H | 22.799 | | | | PENNSYLVANIA   WASHINGTON | | | | |
| OWNER#:  .00048171 | | | | | | | | | | | 872.83- PHI | | .42 |
| TOTALS | .00 | | | | | | | | | | .42- | | .42 |
| 410160611  12/2018 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 10H | 21.637 | | | | PENNSYLVANIA   WASHINGTON | | | | |
| OWNER#:  .00048171 | | | | | | | | | | | 525.23- PHI | | .25 |
| TOTALS | .00 | | | | | | | | | | .25- | | .25 |
| 410160611  07/2020 | 2 | 2 | R4 | CAMPBELL JACOB UNIT 10H  1066  141,166.02  68.00 | 1.284 | 1.205 | .298 | .280 | PENNSYLVANIA   WASHINGTON  170,138.18  81.96 | | | | |
| OWNER#:  .00048171 | | | | | | | | | | | 39,549.17 FCI | | 62.90 |
| | | | | | | | | | | | 19.06 | | |
| OWNER#:  .00048171 | | | | | .808 | .758 | | | | | 107,055.55 GAI | | 51.57- |
| | | | | | | | | | | | 51.57 | | |
| OWNER#:  .00048171 | | | | | .024 | .022 | | | | | 3,219.04 PTC | | 1.55- |
| | | | | | | | | | | | 1.55 | | |

RANGE RESOURCES CORPORATION and subsidiaries
100 THROCKMORTON ST STE 1200
FORT WORTH    TX   76102

BARBARA SULLIVAN
334 ELMWOOD AVE
WOLLASTON          MA   02170-

OWNER NUMBER:  161951
CHECK NUMBER:  Redacted
CHECK DATE..:  09/30/2020
PAGE NUMBER.:  15 OF 15

| PROPERTY# | INT | PC | DOI | PROPERTY NAME | | | | | STATE | COUNTY | | | | SALES VALUES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | SALES VOLUMES | | | PRICE | | | DC RATE | | | | | |
| PROD DATE | | MCF/BBL | BTU | MHBTU | MMBTU | MCF/BBL | MHBTU | MMBTU | GROSS VALUE | TAXES | DEDUCTIONS | DC | NET VALUE |
| 410160611 | 2 | 2 | R4 | CAMPBELL JACOB UNIT 10H | | | | | PENNSYLVANIA | WASHINGTON | | | | | | |
| OWNER: 1.00000000 | | 63.79 | | 66.00 | | | .278 | | .261 | | 81.96 | | | 17.78- R80 | 17.78 |
| | | | | | | | | | | | | | 17.78- | |
| TOTALS | | 63.79 | | 68.00 | | | | | | | | | | | 27.56 |
| 410160611 | 2 | 3 | R4 | CAMPBELL JACOB UNIT 10H | | | | | PENNSYLVANIA | WASHINGTON | | | | | | |
| OWNER: .00048171 | | 20,996.80 | | 15.995 | | | 16.100 | | | 334,859.19 | | | 211,978.89 PHI | 59.20 |
| | | 10.11 | | | | | | | | 161.30 | | | 102.10 | |
| TOTALS | | 10.11 | | | | | | | | | | | | | 59.20 |
| 410160611 | 2 | 5 | R4 | CAMPBELL JACOB UNIT 10H | | | | | PENNSYLVANIA | WASHINGTON | | | | | | |
| OWNER: .00048171 | | 845.71 | | 30.645 | | | | | | 25,917.51 | | | | 12.49 |
| | | .40 | | | | | | | | 12.49 | | | | |
| TOTALS | | .40 | | | | | | | | | | | | | 12.49 |
| 410160611 | 2 | | R4 | CAMPBELL JACOB UNIT 10H | | | | | PENNSYLVANIA | WASHINGTON | | | | | | |
| OWNER: 1.00000000 | | .00 | | | | | | | | | | | 3.15 PHH | 3.15- |
| | | | | | | | | | | | | | 3.15 | |
| TOTALS | | .00 | | | | | | | | | | | | | 3.15- |
| CHECK TOTALS ....: | | | | | | | | | 1,283.33 | | .00 | 752.97 | | | 510.36 |

PC PRODUCT CODES : 3=NGL, 2=GAS, 5=COND,
INT INTEREST TYPES: 2=ROY, INT,
DC DEDUCT CODES : FMT=FMC FEE-INV; FCI=FIRM CAPACITY-IN, GAI=GATHERING-INV, FPC=PURCHASED FUEL, R80=FPC CAP .80 MMBT; PHH=PA INCOME TAX W/;
IMPORTANT INFORMATION: Please retain for income tax purposes, duplicates cannot be furnished.
Direct inquiries to (844) 594-6775 or email OWNERRELATIONSRANGERESOURCES.COM.

RECEIVED

2021 AUG -4   AM 8: 10

DAUPHIN COUNTY
SHERIFF'S OFFICE
HARRISBURG, PA 17101

